OPINION.
Davis, J.,
delivered the following opinion of the court:
In Irene Taylor’s Administrator's Case (14 C. Cls. R., 339) we decided that when a sale of real estate was made by direct-tax commissioners to a third party, for non-payment of a tax due to the United States under th o Act of-June 7, 1862 (12 Stat. L., 422), and a surplus of the purchase money remained after satisfaction of the tax and all costs and charges, and that surplus was paid into the Treasury, the owner of the real estate, or his legal representatives, could demand the same of the Secretary of the Treasury under the provisions of the Act of August 5, 1861 (12 Stat. L., 292); and that if payment should be refused, an action could be maintained therefor in this court, as upon an implied contract to pay it over to such owner or representative. ■
*601 We also beld that under the Act of 1861 the statute of limitations did not begin to run against the owner of such surplus, or hjs representatives, until demand made at the Treasury for it and refusal to pay.
On both these points the Supreme Court on appeal sustained this court. (United States v. Taylor, 104 U. S. R., 216.)
The present case differs from Taylor’s Case in this: that the real estate was bought in by the tax commissioners for the United States and no actual money was paid.
In their opinion in Taylor’s Case the Supreme Court said:
The commissioners, in case of the non-payinent of the tax, penalty., and charges, were required to sell the lands at public sale to the highest bidder for a sum not less than the amount of the tax, penalty, &c., and, if no person bid more, then to strike oif and sell them to the United States for that sum. In case the United States became the buyer, there was, of course, no surplus.
In consequence of this expression, the Government contends that the Supreme Court holds that in case of a purchase by the United States there can in no event be a surplus to be paid to the owner or to go into the Treasury.
If this be so, it disposes of this case. But an examination of the language of the Supreme Court, and of the terms of the seventh section of the Act of 1862, to which it refers, shows that that court, in saying that there would be no surplus in case of a purchase by the United States, referred only to a sale under the provisions of the seventh section. Those provisions are as follows:
And the said commissioners shall, at said sale, strike off the same to the United States at that sum (i. e., a sum not less than the taxes, penalty, and costs, and cen per centum per annum interest on said tax) unless some Iverson shall bid the same or a larger sum.
It is mathematically true that there -can be no surplus for the owner when the property sells for just the taxes, penalty, interest, and costs for which it is responsible; and that is all the Supreme Court say in Taylor’s Case.
In the present case, however, the property sold for $929.50 surplus above the sum of the taxes, penalty, costs, and interest on the tax, but no money was paid.
The Act of 1862, under which the sale was made, contained no authority for a purchase by the United States except the one cited above; and as the purchase was not made under that authority, but under the authority derived from the Act of Feb *602 ruary 6.1863 (12 Stat. L., 640), it follows that the United States became a general competitor at the vendue, like any other bidder, and obtained the property as such. We think this fact imposed upon the Government the same obligations and duties towards the owner which it would have- incurred had the property been struck off to a stranger.
Had a stranger been the purchaser, the United States would have been bound, out of the money received from the sale, to satisfy the tax, costs, penalty, and interest, and then to pay the surplus to the owner or his legal representatives; or if he or they could not be found, or should refuse to receive the same, then to pay it into the Treasury. As they were themselves the purchasers, their officers did not go through the form of paying the money; but their books ought to show and one of their courts ought, in common justice, to assume that their books do show that they acquired this property by the use of money taken from their Treasury and applied partly to the payment of their own taxes, penalty, and interest, partly to the expenses of collecting the amounts due them, and that the remainder is held by them as custodians for the persons lawfully entitled to demand it as owners of the property sold. It was made the 'duty of the defendants’ officers to do this. In the absence of proof to the contrary, it is a legal presumption that they performed their duty. (Crussell’s Case, 7 C. Cls. R., 276.)
In Taylor’s Case the Supreme Court say of these acts:
The act provided for the collection of direct taxes in insurrectionary districts. It was not a confiscation act. * * * A construction consistent with good faith should be given to these statutes. It would certainly not be fair dealing for the Government to say to the owneT that the surplus proceeds should be held in the Treasury for an indefinite period for his use or that of his legal-representatives, and then, upon suit brought to recover them, to plead in bar that the demand therefor had not been made within six years.
Similar equitable considerations are applicable to the present case. It would be inequitable to hold that the officers of the United States can, by over bidding- strangers at the sale, prevent the owner from receiving the surplus to which he would otherwise be clearly entitled under the statute.
The counsel for the defendants further calls attention to the fact that the Government took possession of these lands in that part of South Carolina and leased a part of them, and sold all but fifty acres of the tract now in question.
*603 This was in part done by the authority conferred by Congress fn the elevt nth section of the Act of 1862; and this court has already held, in Taylor’s Case, and the Supreme Court has sustained us, that proceedings under section 7 are not affected by the subsequent grants of power in sections 9, 10, 11, and 12. The tax sale which is now under consideration, and others like it, were considered by Congress in 1866. Any defects there may have been in the proceedings for want of power were then cured. All steps outside of previous statutes were Tatified by the Act of July 16, 1866 (14 Stat. L., 173). The sixth section of this act recites that those properties in the parishes of Saint Helena and Saint Luke had been bid in by the United States at tax-sales, and approves the setting' apart ■of certain portions of the same by the .tax commissioners for the benefit of the freedmen. That section and the remaining ■sections of the act further make provision for disposing of the remainder of these lands. This removes any doubt there may ■have been as to the power of the tax commissioners to bid in the property at the sale at a price above the tax, penalty, interest, and costs, and fixes, if it had not been fixed before, the liability of the defendants, under the Act of 1861, to account -for the surplus. ' -
The claimant has made his demand at the Treasury in due form for this surplus, and has been refused. It only remains to consider whether he is the person entitled to the money.
The claimant’s grandfather died in 1827, leaving a will by •which he devised, among other property, the said tract (in the language of the will)—
Unto such person or persons as I sliallhereafter appoint my executor or «executors to and to tlie use of them or him my executor or executors, their heirs, executors, &assigns, upon the trust nevertheless, and to & for the indent & purpose hereinafter expressed and declared of and concerning the ■same. That is to say, upon trust for the sole benefit of my beloved ■daughter, Martha S. Barksdale, for and during.her natural life, free, and free from debts, contracts, and engagements of any husband to whom she may be allied, or the intentions or claims of his creditors; and upon the death of my said daughter Martha S. Barksdale, it is my will, intention, and desire that the trusteeship above created in executor or executors over the said part of my real and personal property shall immediately dissolve and expire; and if my said daughter Martha S. Barksdale shall have any lawful issue living at the time of her death, then I give and devise the said part of my 3?eal and personal property to such issue, him, .her, or them and their heirs iforever.
*604 The said Martha S. Barksdale was the mother of the claimant. She died in 1880, leaving the claimant her sole surviving lawful issue at the time of her death.
In our opinion the executors of the will as trustees were created tenants for the life of Mrs. Lawton, with the remainder over to such of her lawful issue as should be living at the time of her death (Mendenhall v. Mower, 16 S. C. R., 303; Reeder v. Spearman, 6 Rich. Eq., 88; McCorkle v. Black, 7 ibid., 407); the right to the surplus followed the disposition of the land; and, the trustees having failed to demand it during the term of the life estate, the claimant as remainder-man is entitled, to it.
The judgment of the court is that the claimant do have andl recover of the defendants the sum of nine hundred and twenty-nine dollars and fifty cents.