Littleton, Judge,
delivered the opinion of the court:
Plaintiffs are nonresident aliens and reside in and are nationals of the Kingdom of Greece. The courts of the Kingdom of Greece accord to citizens of the United States the same rights and privileges in the courts of the Kingdom of Greece as are accorded to citizens of the Kingdom of Greece in courts of the United States.
Eustadio D. Papavasilopulo was engaged in business in New York City as an importer of merchandise from 1905 to 1909, both inclusive; as such importer, he imported and was the consignee of certain merchandise which was imported at the Port of New York, and, in order to secure the release by the collector of customs of the merchandise for delivery, Papavasilopulo paid certain amounts assessed for duty by the defendant under the then existing tariff act.
The Board of General Appraisers, acting under and pursuant to the provisions of the applicable tariff act, made a determination that part of the imported merchandise was free of duty under the tariff act, and, by reason of and in accordance with this determination made by the board, the *144 assessments previously made and paid were duly liquidated by the collector of customs. Upon such liquidation Papa-vasilopulo became entitled to certain refunds of duties, originally deposited with and paid to the collector by him, totaling $19,603.34.
The tabulation below shows the number of the entry withdrawal, the date of entry of the merchandise, the date of liquidation of the correct import duties due under the tariff act pursuant to decision of the Board of General Appraisers, and the amount of refund due Papavasilopulo in respect of the amounts paid to the collector in each case for the release and withdrawal of the merchandise.
Entry withdrawal number Date of entry Date of liquidation Amount of refund Entry withdrawal number Date of entry Date of liquidation Amount of refund
41929. 2-18-07 12-24-07 $798.45 180163._ 8-27-08 4-20-10 $324.60
10567. 1-15-07 3-26-30 746.25 74098.._ 3-29-09 4-20-10 576.15
54216. 3- 5-09 3-26-10 507.00 123391.. 6-10-08 4-22-10 625.95
243878. 9-17-07 3-30-10 507.75 69258 — . 3-26-08 4-26-10 1,141.95
267049. 10-11-07 3-30-10 648.00 276680-12-13-05 4-27-10 415.20
52578. 3- 5-08 3-30-10 867.90 24135_ 1-27-06 4-27-10 60.00
176700. 7-21-06 4- 1-10 256.50 40022_ 2-15-06 4-27-10 496.94
395293. 8-13-06 4r- 1-10 504.75 69289_ 3-21-06 4-27-10 407.25
97784. 4-19-06 4-5-10 479. 25 112398-5-7-06 4-27-10 258.75
170286. 7-13-06 4-5-10 418.50 128859... 5-24-06 4-27-10 338.25
285922. 11-20-06 4-5-10 474.75 70863— 3-24-09 5-10-10 130.20
287713. 11-21-06 4-5-10 548.25 118471... 5-15-09 5-10-10 851.70
100013. 4-18-07 4- 5-10 627.00 97020.... 4-22-09 5-12-10 907.35
169246_ 7- 1-07 4- 5-10 871.80 26478_ 6-23-09 5-13-10 543.00
232944. 9-25-06 4r-ll 10 570.75 186677... 7-19-07 8-31-11 521.25
143353. 6- 3-07 4^11-10 805.50 289838— 11- 4-07 9- 9-12 8.62
163521_ 6-25-07 4-11-10 737.70 312925— 12-18-06 12- 2-12 301.65
52569. 2-25-09 4-11-10 22.05 85584-4- 2-07 1-20-19 2.88
61045. 3-11-07 4-13-10 362.25
131197». 6-19-08 4-20-10 937.35 Total. 19,603.34
No protests were ever filed by Papavasilopulo, or by anyone on his behalf, against such liquidations by the defendant, and such liquidations and the amounts of the refund due, totaling $19,603.34:, became final and conclusive.
Eustadio D. Papavasilopulo died intestate October 16, 1918, a resident of the City of Amalias, Kingdom of Greece, and a national of that Kingdom, and the plaintiffs are his only heirs-at-law and next of kin.
After the liquidation as above-mentioned had been made, no specific demand for payment of the refunds determined *145 to be clue was thereafter made prior to October 18, 1936, by or on behalf of Papavasilopulo. In June 1934, the Collector of Customs for the Port of New York drew checks on the Treasurer of the United States payable to the order of the decedent, Estuadio Papavasilopulo, to pay -and discharge the refunds due on account of the payments originally made in respect of the imported merchandise and the liquidations subsequently made, as aforesaid, on the dates and in the amounts following:
Check No. Date Amount
247396-June 25,1934. $11.40
247567-_do. 22.05
247569-.do. 2,410.50
247850-June 26, 1934-16,616.39
247855. ._do_ 543.00
Total-19, 603.34
Owing to the death of Papavasilopulo and the fact that no one was present in the United States to receive the checks for the refunds, such checks were transmitted by the Collector of Customs to the Comptroller General, Washington, D. C., as an outstanding liability of the United States.
October 13, 1936, the Comptroller General, by a communication of that date, refused to pay said checks for the refunds in question and directed that the refunds due be used and applied as a partial liquidation of a claim for alleged loss of revenue alleged to be due the United States from Papavasilopulo with compound interest at 6 percent per annum. Neither the deceased, Estuadio D. Papavasil-opulo, nor- the plaintiffs, was ever indebted to the United States in any amount for any purpose, and the United States was not entitled to use or apply these refunds on export duties as an offset in partial liquidation of any claim against Papavasilopulo or the plaintiffs.
This suit was instituted by the filing of the petition! on June 20,1940.
From the foregoing statement of facts, about which there is no controversy, the amount of $19,603.34 is due plaintiffs and is not subject to any offsets or credits, but the defend *146 ant, by a demurrer filed to the petition, contends that the court is without jurisdiction to enter judgment in favor of plaintiffs for the reason that the claim for the amounts of overpayments making up the total refund of $19,603.84 accrued not later than 30 days after the dates of liquidation, as hereinbefore set forth, and was barred by the statute of limitation of six years at the time the petition was filed. Plaintiffs contend that the cause of action for the overpay-ments making up the total refund due did not accrue until payment thereof was refused by or on behalf of the United States on October 13, 1936, and that, therefore, the suit was timely instituted when the petition was filed June 20, 1940.
We are of opinion that suit was barred by the statute of limitation at the time the petition was filed and that the demurrer must therefore be sustained. Custom duties at the present time are paid pursuant to the act of June 17, 1930, Title IV, section 506, 46 Stat. 732 (19 U. S. Code 1505), which provides that the consignee at the time of making entry shall deposit the amount of duty estimated to be payable on the goods imported. The corresponding provision in effect during the period when entries here in question were made, as found in section 2904 of the Revised Statutes, provided for an estimate of the import duties. Under the present statute, the collector of customs subsequent to such preliminary assessment, and upon receipt of the appraiser’s report and others, ascertains and liquidates the amount of duty payable. A similar procedure existed under the tariff act of June 10, 1890, 26 Stat. 131, which is the statute applicable here, and for years prior thereto. Section 14 of that act provided that the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise should be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise should within ten days after such ascertainment and liquidation of duties, or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, give notice in writing to the collector setting forth the reason's for his objections thereto, and if the merchandise is entered for consumption there should be paid the full amount of the *147 duties and charges ascertained to be due thereon; that upon .such notice and payment the collector should transmit the invoice and all papers and exhibits connected therewith to the Board of General Appraisers, which Board should examine and decide the case thus submitted, and their decision should be final and conclusive upon all persons interested therein; that the record should thereupon be transmitted to the proper collector who should liquidate the entry .accordingly, except in cases where an application should be ■filed in the circuit court within the time and in the manner provided for in section 15.
Section 15 provided that if the owner, importer, consignee, or agent of the imported merchandise, or the collector, or the Secretary of the Treasury should be dissatisfied with the decision of the Board of General Appraisers as to the construction of the law and facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, they, or any one of them, might within thirty days after such decision, and not after-wards, apply to the circuit court of the United States within the district in which the matter arose, for a review of the question's of law and fact involved in such decision.
It will be seen from the above that the determinations of the amount of duties due on the merchandise imported and the amount of overpayments and the refunds due the importer in respect of the amounts originally estimated and paid for the release to and disposition by the importer of the merchandise, in respect of which duties were imposed by the tariff act, became final and binding thirty days after liquidation by the collector under the decision of the Board of General Appraisers. The United States was thereupon obligated under the statute to refund to the exporter the excess over the amounts, originally estimated and paid and the amounts finally determined to be due. There had been then an award in favor of the importer by competent legal authority. However, for the purpose of obtaining payment of the amount so determined to be due by a suit in this court, founded upon a claim against the United States arising under an Act of Congress, which this was, we think it must be said that the claim accrued not later than thirty *148 days after tbe date on which the collector of customs made liquidation of each entry in respect of which an overpayment was disclosed. The decisions of this and the Supreme Court, which we deem it unnecessary here to discuss, are to the effect that a claim accrues within the meaning of the limitation statute applicable to this court when all of the events have happened which entitle a claimant to bring suit thereon. In Electric Boat Company v. United States, 81 C. Cls. 361, 368, it appeared that on October 23, 1925, the Secretary of the Navy considered and allowed the claim of plaintiff under a contract for a sum which was included for the first time in a suit brought December 12, 1932, more than seven years after the determination and allowance of the claim by the Secretary. The court held that the date of allowance by the Secretary fixed the time for the running of the statute of limitation.
In these circumstances this court cannot enter judgment in favor of plaintiffs for the amount claimed and admittedly due them for the reason that the period during which suit might have been instituted to obtain judgment for the award and payment thereof by an appropriation in the usual way was a limitation upon the consent of the United States to be sued, and at the time the petition was filed this court was without jurisdiction to1 consider the claim. Wisconsin National Life Insurance Co. v. United States, 70 C. Cls. 433. The right to sue having once occurred and the period of limitation within which suit might have been brought upon the award having expired, we think a new cause of action1 with a new period of limitation was not created by the drawing of checks by the collector of customs and the withholding of the amount of such checks by the Comptroller General. Electric Boat Company v. United States, supra; Finn v. United States, 123 U. S. 227, 233; Carlisle v. United States, 29 C. Cls. 414, 416. The decedent and the plaintiffs were required, in the event payment was not made, to pursue the course open to them to bring suit upon the award within the time allowed, or to take their chance on being able to obtain payment administratively at a later date. They chose the latter course with the result that they lost their right to bring suit.
*149 In reaching this conclusion we have carefully considered the contention advanced on behalf of plaintiffs that the payment by the importer on making custom-house entry of the initial estimated assessment did not constitute a payment of duties but was merely a deposit or pledge to be returned in whole or in part upon liquidation; that upon the determination made by the Board of General Appraisers that the imported merchandise was free of duty in the amount of $19,603.34, this part of the initial assessment constituted a deposit in possession of the defendant belonging to the importer, and under the rule of law with respect to deposits the cause of action thereof did not accrue until demand for and refusal by the defendant to surrender the deposit,; Marriott v. Brune (Federal Cases 2052, Taney 132); Barney v. Rickard, 157 U. S. 352, 363; Art. 1082, Customs Kegulations of 1908. But we are of opinion that the decisions cited and the rule of law relating to deposits generally are not applicable here. The amounts paid to the collector of customs upon entry of the merchandise pursuant to the assessment made by the collector were not deposits in the strict sense of the word although, for the purpose of fixing the amount of tariff duty actually due on the imported merchandise, the amounts paid to obtain release of the merchandise were in the nature of deposits on account of the duties imposed by the statute. More might be due. There was no trust relationship between the parties with reference to the amounts paid. In making the original assessments the collector was administering an act of Congress, and in making payments thereof the importer was discharging an obligation under the act which imposed the import duties on the merchandise in question. Atlantic Oil Producing Company, Dissolved, v. United States, 92 C. Cls. 441. The cases of Waddell, Executrix, v. United States, 25 C. Cls. 323, 328; Wardell, Administratrix, v. United States, 32 C. Cls. 30, 172 U. S. 48; and Ray v. United States, 50 Fed. 166, arose under statutory provisions and circumstances which differed materially from the statute and circumstances under which the payments here in question were made. For this reason the rule applied in those cases, that the statute of limitation of six years did not begin to run until demand *150 for and a refusal to- pay, is not applicable here. Under the statute and regulations applicable to the case at bar, the' excess duties determined were due and payable to the importer thirty days after the dates of liquidation, and no' demand therefor was necessary or was required to perfect the importer’s right thereto, or to sue therefor if not paid' during the period within which suit might be brought.
The statute of limitation applies only to the remedy and not to the rights of the parties. Whether the proper' officials of the government may still pay the refunds, we do not decide (cf. United States ex rel. Arant v. Lane, 249 U. S. 367; Duke v. Turner, 204 U. S. 623); if they cannot, the plaintiffs’ only remedy is by petition to Congress for relief.
The petition herein must be dismissed. It is so ordered.
Whitaker, Judge; Green, Judge; and Wiialey, Chief Justice, concur.