JoNes, Chief Judge,
delivered the opinion of the court:
Plaintiff seeks to recover the difference between the disability retired pay of a captain in the United States Naval Reserve with more than 16 years of cumulative service, which *441 be is now receiving, and the pay of such officer with more than 18 years of cumulative service. The additional years of service credit which plaintiff claims represent service as a midshipman at the United States Naval Academy.
Plaintiff served as a midshipman at the Naval Academy from May 5,1910, until June 5,1914, under an appointment made prior to March 4,1913.[1] On June 6,1914, he received a commission in the Regular Navy and served as a commissioned naval officer until December 24, 1920, at which time he resigned under honorable conditions. At the time of his resignation, his active duty pay was based upon length of service including longevity credit for four years and one month at the Naval Academy. On August 28,1940, plaintiff was commissioned as a lieutenant commander in the United States Naval Reserve, and served continuously until he was retired by reason of permanent physical disability on January 1, 1951. His retirement was effected under section 402(a) of the Career Compensation Act of 1949, 63 Stat. 802, 816, 37 U.S.C. § 272(a), now codified as 10 U.S.C. §1201.
Both parties have moved for summary judgment. The Government takes the position that plaintiff cannot include his midshipman service in the computation of his service credit, because he was not in the service on June 30, 1922. The significance of that date will be discussed below.
Section 202 of the Career Compensation Act of 1949, supra, prescribes the service which can be counted in computing cumulative years of service. Section 202 (a) (3), upon which the Government relies, reads as follows: *442 Plaintiff says Ms situation does not fall within that category, but comes within the purview of section 202(a)(6), which provides:
*441 (3) for commissioned officers in service on June 30, 1922, all service which was then counted in computing longevity pay, * * *
*442 (6) all service wMch, under any provision of law in effect on the effective date of this section is authorized to be credited for the purpose of computing longevity pay.
The question before the court is whether or not there was “any provision of law in effect on the effective date” of the Career Compensation Act, wMch permitted midsMpman service to be credited to persons such as plaintiff for the purpose of computing longevity pay.
The Act of March 3,1883, 22 Stat. 472, 473, permitted all officers of the Navy to credit “the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, * * The Supreme Court subsequently interpreted this language to allow the inclusion of midshipman service for the purpose of computing longevity pay under the 1883 statute. United States v. Cook, 128 U.S. 254 (1888); United States v. Baker, 125 U.S. 646 (1888). The Act of March 4, 1913, sufra, denied that right to all midshipmen thereafter appointed to the Naval Academy.
The next statute dealing with the inclusion of midsMpman service was the Act of June 10,1922, 42 Stat. 625, 627, which in pertinent part provided as follows:
For officers appointed on and after July 1, 1922, no service shall be counted for purposes of pay except active commissioned service under a Federal appointment and commissioned service in the National Guard when called out by order of the President. For officers in the service on June 30,1922, there shall be included in the computation all service which is now counted in computing longevity pay, and service as a contract surgeon serving full time; * * *
The Pay Readjustment Act of 1942, 56 Stat. 359, 360, repeated the above language and added:
Longevity pay for officers in any of the services mentioned in the title of this Act shall be based on the total of all service in any or all of said services which is authorized to be counted for longevity pay purposes *443 under tbe provisions of tbis Act or as may otherwise be provided by law.
Whatever right plaintiff retained after the enactment of the 1922 act was saved to him by the 1942 act, and section 202 (a) (6) of the Career Compensation Act of 1949, quoted above, continued to preserve his right, if any.
The question then becomes whether the 1922 act preserved the right to count midshipman service to all those men who had attended the Naval Academy under pre-1913 appointments, or only to those men who served as midshipmen under pre-1913 appointments and, in addition, were in the service on June 30, 1922. It is the Government’s position that the latter interpretation is the proper one, and in support of that position, the Government cites Williams v. United States, 136 C. Cls. 582 (1956); Brownell v. United States, and Foster v. United States, both cited as Broyderick, et al. v. United States, 140 C. Cls. 427 (1957). We are of the opinion that these cases are not dispositive of the issue now before the court.
In Williams, petitioner urged that section 202(a) (6) of the Career Compensation Act of 1949, supra, preserved his right to count his service as a cadet at the Coast Guard Academy. The Government relies upon certain language used in that case at pages 585-586, quoted in a footnote below.[2] Williams attended the Coast Guard Academy from August 10, 1945, to June 3, 1949, on which latter date he received his commission as an ensign in the Coast Guard. The 1922 act provided that for purposes of pay for officers appointed on and after July 1, 1922, only active commissioned service under a Federal appointment could be counted. Williams was an officer appointed after July 1, 1922, and *444 the court did not consider Coast Guard cadet service to be “active commissioned service.” Until 1922 the right to count Coast Guard Academy service had not been expressly taken away by statute, as had the right to count Naval or Military Academy service in the 1912 and 1913 acts cited above. The date June 30, 1922, was significant in that case, because it was the last date on which Williams could have acquired the right to credit his Coast Guard Academy service. There the 1922 date was analogous to the cutoff date in the 1912 and 1913 statutes.
In the Foster and Brownell cases, supra, petitioners had attended the Naval Academy under pre-1913 appointments, were serving as commissioned naval officers in the service on June 30, 1922, but subsequently had breaks in service before accepting commissions in the Naval Reserve in which they served until their retirement. The Government there urged that petitioners could not count their midshipmen service, because their service was not continuous after June 30, 1922. The court granted recovery. The Government takes the position that recovery was allowed in those cases only because petitioners therein had been “in the service on June 30,1922.” We do not believe those opinions should be read so restrictively. The court stated at pages 439-440 of the opinion in those cases:
The allowance of additional service credit for pay purposes to officers who were in the service before a particular date, without requiring continuous service after that date, is not unusual. We note particularly the last paragraph of section 15 of the Pay Readjustment Act of 1942, supra, which provides that the retired pay of officers who served in the armed forces prior to November 12, 1918, should be entitled to retired pay at the rate of 75 percent of the active duty pay of such officer at the time of retirement. We think that Congress, in passing the Act of March 4,1913, and the Act of June 10, 1922, intended to permit officers whose midshipmen service was prior to March 4, 1913, to continue to have the benefit of the longevity credit granted to them in the 1883 Act, and that a break in service subsequent to June 30,1922, did not deprive them of such credit under that act or under any subsequent legislation.
*445 We believe that these eases leave open the question of whether a break in service before June 30, 1922, deprives one of the right he has already acquired to credit his midshipman service.
In the instant case Jalbert served at the Naval Academy under an appointment made prior to March 4, 1913, and he had the right to count his midshipman service at least until 1920. The question is whether the right which he had in 1920 was taken away from him because he was not “in the service on June 30, 1922.” This is a problem of statutory interpretation as to whether the 1922 act preserved the right to credit certain service to everyone who had acquired the right prior thereto, or only to those who had acquired such right and who, in addition, were in the service on June 30, 1922. We believe it was the former.
The provision of the 1922 act which we are now construing seems simple enough on its face. The Government contends that if we hold for plaintiff, we would be interpolating into the statute the words “or before,” so that it would read: “For officers in the service on or before June 30, 1922, there shall be included in the computation all service which is now counted in computing longevity pay, * * The 1922 act did not confer the right to count midshipman service. Being in the service on June 30, 1922, did not confer that right; it was granted by the 1883 act as construed by the Supreme Court. The 1922 act did not cut off the right to credit midshipman service. That right was eliminated by the 1912 and 1913 statutes for midshipmen appointed after 1913.
The provision of the 1922 act here in question included several things. It provided that for officers thereafter appointed only “active commissioned service” would be credited for pay purposes, thereby cutting off the right to include enlisted service and, as construed in the Williams case, sufra, Coast Guard Academy service. On those who already had the right to count academy service and certain constructive service,[3] this section of the act conferred a new right. The . *446 new right was to count that service not only for longevity pay purposes but for advancement to the pay period of the next higher gradé.[4] 62 Cong. Eecord 6758-6759 (67th Cong., 2d Sess.). This new right was denied to men thereafter coming into the service and entitlement to that right required one to be in service on June 30, 1922. However, plaintiff herein is seeking only the right to credit his midshipman service for purposes of computing longevity pay, a right which existed prior to the 1922 act to those men who attended the Naval' Academy under pre-1913 appointments, and which was saved by that act. Thus we see that this provision ended certain rights, conferred certain rights, and saved certain rights.
The legislative history of the 1922 act shows Congress intended to keep its bargain with those men who had acquired a right to count academy service under pre-1912 or pre-1913 appointments and to count certain other types of service. 62 Cong. Eecord 6547 (67th Cong., 2d Sess.). The debate was in terms of men now in service and those who would come into the service in the future; Congress, no doubt, was thinking of the normal situation where a man would have attended the academy under a pre-1912 or pre-1913 appointment and would remain in the service until his ultimate retirement. 62 Cong. Eecord 6617-6618 (67th Cong., 2d Sess.). The legislative history of the 1922 act does not indicate any discussion of the problem of the man who had acquired the right to credit midshipman service, resigned from the service after a period of commissioned service, and then reentered the service at some future time. We believe that if the issue had been specifically raised the Congress would have indicated that it was reaffirming its bargain with those men who attended the academies under pre-1912 or pre-1913 appointments with the expectation that they would be permitted to count that time in the computation of their longevity pay. The 1913 statute had saved the right to credit midshipmen service to men receiving appointments to the Naval Academy prior thereto, and that right would have continued to exist even if Congress had *447 said nothing in the 1922 act. However, after enacting the provision whereby only active commissioned service could be counted for pay purposes for officers thereafter appointed, Congress indicated clearly that it was not taking away rights already acquired.
"What then is the significance of the fact of being in the service on June 30,1922 ? We believe that being in the service on that date was necessary for the entitlement to count academy service, constructive service, and enlisted service for the purpose of advancing to the next higher pay period, a right which had not existed prior thereto and a right which was denied to men appointed thereafter. We do not believe that being in the service on June 30, 1922, was necessary to save one’s entitlement to credit midshipman service, and that as to that right Congress was merely reaffirming its obligation to the men who attended the Naval Academy under pre-1913 appointments.
The Government’s motion for summary judgment is denied, and plaintiff’s similar motion is granted. Plaintiff is entitled to recover on that portion of his claim not barred by our 6-year statute of limitations, i.e., from June 1, 1952, to the date of judgment.[5] The amount of recovery will be determined in further proceedings pursuant to Pule 38 (c).
It is so ordered.
Littleton, Judge, {Bet.) and Madden, Judge, concur.

 The Act of March 4, 1913, 37 Stat. 891, 37 U.S.C. § 4c-l, sala:
"Hereafter the service of a midshipman at the United States Naval Academy, or that of a cadet at the United States Military Academy, who may hereafter be appointed to the United States Naval Academy, or to the United States Military Academy, shall not be counted in computing for any purpose the length of service of any officer In the Navy or In the Marine Corps.”
The Act of August 24, 1912, 37 Stat. 569, 594, 37 U.S.C. § 4c, provides:
“That hereafter the service of a cadet who may hereafter be appointed to the United States Military Academy or to the Naval Academy shall not be counted in computing for any purpose the length of service of any officer of the Army.”

 “A distinction Is made in tie statutes between officers in service on June 30, 1922, and those not in service on that date. The two acts last quoted above mate clear that for officers not in service on June 30, 1922, cadet time at the Coast Guard Academy is not included among the classes of service enumerated. Such time would appear not to be creditable to such officers for longevity pay purposes.
“We conclude that at the effective date of section 202 of the Career Compensation Act of 1949 officers not in service on June 30, 1922, were not entitled to include time spent at the Coast Guard Academy for longevity pay purposes. There being no other basis in the statute for allowing such time for longevity pay to the plaintiff, he is not entitled to recover.”

 The Act of March 3, 1899, 30 Stat. 1004, 1007, granted a 5-year service credit to officers appointed to the Navy “from civil life.” As in the case of the right of naval officers to count academy service, this right to credit constructive service was repealed in 1913 as to appointments made thereafter. 37 Stat. 891.

 See Minority Report accompanying H.R. 10972, House Report 926, Part 2, pages 2-6 (67th Cong. 2d Sess.).

 Plaintiff’s petition was filed on June SO, 1958.