Davis, Judge,
delivered the opinion of the court:
The plaintiff is the widow and executrix of Dr. Joseph Friedman who served in the Army on active duty as a medical officer from January 9, 1941, to January 30, 1947. She sues for disability retirement pay alleged to have been arbitrarily denied her husband.
During his service Dr. Friedman suffered a number of periods of serious illness and underwent considerable hospitalization. In 1944 — 1946 he had a series of boards to canvass his capacity for continued service, the last of which was a Betiring Board at Walter Beed General Hospital which decided on October 25, 1946, that he was not perma *5 nently incapacited for active service, but also recommended that he be placed on a period of temporary limited duty not in excess of six months, with re-examination and reevaluation at the end of that time. This was not done and he was released, at his own request, on January 30, 1947, not for physical disability. The plaintiff claims that in December 1946, before his release, Major Friedman wrote to Walter Reed, in response to an official request that he indicate whether he wished to remain on temporary limited service for six months or be separated at once, asking that he be recalled to active duty at the end of six months from his appearance before the Retiring Board (which had been in October 1946), for the purpose of re-examination and reevaluation at the hospital. What is said to be the decedent’s office copies of such an exchange of letters is presented to us. The defendant answers that the files at Walter Reed and in the Adjutant General’s Office contain no such correspondence or indication of it. Whether or not Dr. Friedman did make such a request in December 1946, it is clear that after his separation in January 1947 he made no further request of the Army and did nothing further to obtain disability retirement pay at any time during the remainder of his life. He died on October 4, 1958. After his death, his widow applied to the Board for Correction of Military Records on March 18,1960, for a determination that he had been entitled to disability retired pay when he was released from active duty in January 1947. This application was denied on August 17, 1960. The petition in this court was filed on September 30, 1960. The parties have both moved for summary judgment.
As our statement of the case implies, this is another suit for disability retirement pay in which the first issue is whether the claim is barred by the six-year statute of limitations, 28 TJ.S.C. 2501. There are a multitude of cases— past, present, and potential — involving this thorny question. The court’s recent ruling in Lipp v. United States, 157 Ct. Cl. 197, has been the fulcrum for a broad range of claims and contentions put forth both by plaintiffs and the Government. Briefs in pending cases and motions for rehearing or reconsideration strongly suggest that there are large uncertainties *6 and inconsistencies in our past decisions; they call upon us to reassess tbe court’s general position on the bar of limitations in the field of pay cases. We therefore take the opportunity to spell out in detail, in this case and the related case of Harper v. United States, also decided this day, post, p. 135, the rules we shall now follow and which we believe the court has been following, in the main, in its prior holdings. In the present case, the result of our consideration is that the claim is barred by limitations. In the Harper case, we conclude that the suit is not time-barred.
We discuss first the course of this court’s past decisions on the time-bar in pay cases, including the rulings in the disability retirement area. Next we consider afresh the primary contention pressed by the plaintiffs in this and related cases: Does the determination of the Board for Correction of Military Becords denying a claim for disability retirement ground a new cause of action upon which the claimant has six years to sue in this court? Finally, we treat the limitations problem as it is presented in this particular case.
X. THE COTTRSE 0E THIS OOuRT’s DECISIONS ON THE LIMITATIONS BAR IN PAY CASES
We emphasize at the outset that, in canvassing the court’s prior decisions, we have been mainly guided by our holdings, as distinguished from dicta and observations not truly part of the rationale of the decisions. Also, because the place of limitations in disability retirement cases becomes clearer when seen as part of the general design of our rulings on that problem in pay cases of all types, we begin with a discussion of the different kinds of pay litigation from the standpoint of the time-bar.
A. The “continuing claim” cases. Over the years, the court’s pay cases (military and civilian) concerned with the issue of limitations have often applied the so-called “continuing claim” theory, i.e., periodic pay claims arising more than six years prior to suit are barred, but not those arising within the six-year span even though the administrative refusal to pay the sum claimed may have occurred, or the statute on which the claim is grounded may have been en *7 acted, prior to six years. These were suits for additional pay at a higher grade, or claiming greater compensation (under a statute or regulation) than the claimant was receiving, or seeking special statutory increments or allowances, etc. The important characteristics of all these cases were: (a) Congress had not entrusted an administrative officer or tribunal with the determination of the claimant’s eligibility for the particular pay he sought; (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself (i.eCongress had not established any administrative tribunal to decide either the factual or the legal questions); and (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judical evaluation of broad concepts such as “disability” (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion) ,[1] For such cases— in which no administrative agency has been set up to decide the claim, and the court passes de novo on all issues of law and fact — the “continuing claim” doctrine is wholly appropriate and in accord with the general jurisprudence in this country on the statute of limitations. Under those general principles the cause of action for pay or compensation accrues as soon as the payor fails or refuses to pay what the *8 law (or tbe contract) requires; there is no other condition precedent to the accrual of the cause of action (such as a factual determination by an executive tribunal or the exhaustion of some special procedure or remedy). And where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought. See, generally, Odell v. United States, 184 Ct. Cl. 634; Gordon v. United States, 134 Ct. Cl. 840, 843-4; Levadi v. United States, 137 Ct. Cl. 97, 100, cert. denied, 353 U.S. 917.[2]
B. Gases (other than disability retirement cases) in which the cause of action does not accrue until after a determination entrusted by Congress to an administrative official.
1. Concomitantly with its use of the “continuing claim” theory, the court has applied another principle in a different type of case. That second principle governs situations where Congress has deliberately given an administrative body the function of deciding all or part of the claimant’s entitlement, i.e., where Congress has interposed an administrative tribunal between the claimant and the court. In those instances the claim does not accrue until the executive body has acted (if seasonably asked to act) or declines to act. So also where Congress has insisted that a special demand be made or a special application filed. Generally (but not always) these cases involve evaluation of the facts by the agency, some degree of administrative discretion, and some measure of conclusiveness for the administrative determination. There may be acute differences of opinion whether the particular agency has such a special function or is simply akin to the General Accounting Office — see, e.g., Smithmeyer v. United States, 147 U.S. 342, 357-358[3] — but once the court has decided that the case falls into the former class it has ruled that the claim accrues, not when the events *9 occurred, but when the agency has rendered or refused its determination.
Like the “continuing claim” theory, this second principle fits with general limitations law which recognizes that in appropriate cases conditions precedent to the accrual of a cause of action can be established by statute, contract, or common law, and that where such a condition precedent has been created the claim does not ripen until the condition is fulfilled. See Sese v. United States, 125 Ct. Cl. 526, 528-530.
2. Earlier cases in this court of this general type are Taylor v. United States, 14 Ct. Cl. 339, 353, aff’d 104 U.S. 216, 221-222 (statute required demand upon the Secretary); Lawton v. United States, 18 Ct. Cl. 595, 601, aff’d 110 U.S. 146, 149 (same); Harrison v. United States, 20 Ct. Cl. 175 (same); Louisiana v. United States, 22 Ct. Cl. 284, 288, aff’d 123 U.S. 32, 37 (General Land Office required to consider State’s proof); Horton v. United States, 31 Ct. Cl. 148, 150, 157 (administrative determination relating to informer’s award). More recent cases are Schaeffer v. United States, 114 Ct. Cl. 568, 570 (on demurrer), decision on the merits, 121 Ct. Cl. 369, cert. denied, 344 U.S. 854 (determination by Maritime Commission of just compensation for requisitioned vessels); Smith v. United States, 67 Ct. Cl. 182 (same); cf. Oro Fino Consolidated Mines, Inc. v. United States, 118 Ct. Cl. 18, 21-22, cert. denied, 341 U.S. 948.[4]
3. In recent years the main field in which the court has applied this principle — aside from the disability retirement cases (to be considered infra) — is that of adverse personnel actions against federal employees (refusal of appointment to the federal service; discharge, separation, dismissal, or removal; refusal of reinstatement; reduction in grade; compulsory retirement). In those cases the court has recognized that Congress has entrusted the administrators with a large measure of discretion and has in effect established an executive agency as the primary tribunal for determining *10 whether certain adverse action should be taken against the employee. Accordingly, the court has not applied the “continuing claim” theory but, instead, has viewed the entire cause of action as accruing once the appropriate agency has finally acted.
The first such case was Middleman v. United States, 91 Ct. Cl. 306, decided in 1940. A civil service employee was dismissed on October 14, 1931 — he claimed unlawfully — and suit was not filed until January 2,1940. The court held the entire action barred by limitations. We read the summary opinion as ruling that discharges are outside the reach of the “continuing claim” doctrine because the administrative agency has been granted a large measure of discretion with respect to such personnel determinations. The subsequent opinions of the court in this field (discharge, appointment, reinstatement, reduction in grade, compulsory retirement) accord with the Middleman holding. The court as a court has not applied the “continuing claim” theory.[5] In the recent case of Feldman v. United States, 149 Ct. Cl. 22, 30-32, the court explicitly rejected the applicability of that doctrine to discharge cases.
These decisions are not inconsistent with, or a departure from, the “continuing claim” series. The differing results flow from the existence of two separate categories of claims— “continuing claims” which are independent of administrative determination and those other claims dependent on prior *11 administrative evaluation. The discretionary personnel1 action cases do not fall into the “continuing claim” group, but, rather, into the second class in which the cause of action accrues only after final administrative decision, and then accrues as a whole. There are good reasons of policy for refusing to apply the “continuing claim” principle to such cases. The Feldman opinion, supra, points out that discharged employees should not be permitted to wait years before suing. The same is true of employees aggrieved by other personnel actions, such as refusals to appoint or demotions. Judicial relief should be sought promptly so that the administrators can know whether the employee should be reinstated, restored to his former grade, etc. Even though this court grants only money relief, its rulings on the legal issues normally determine whether the employee will be restored to duty. There is also the dislocation and expense connected with the employee hired to replace the plaintiff. In sum, more than the plaintiff’s own salary is at stake.
4. In deciding in these cases that limitations runs from the date of the administrative action, the court has sometimes had to choose which administrative action it will regard as operative. Where the statute requires that a particular administi’ative remedy must be exhausted (i.e., a mandatory remedy), there has ordinarily been no problem — the statute of limitations does not run until the completion of that process and, by like token, the claimant cannot bring suit until he has reasonably exhausted that remedy. See, e.g., New River Collieries Co. v. United States, 65 Ct. Cl. 205, 232-235; Smith v. United States, 67 Ct. Cl. 182, 206-208; Dawnic Steamship Corp. v. United States, 90 Ct. Cl. 537, 578-579; Utah Power & Light Co. v. United States, 67 Ct. Cl. 602, 606; Mistretta v. United States, 128 Ct. Cl. 41, 45; Cuifo v. United States, 131 Ct. Cl. 60, 63-64, 66-67.
Where, however, an administrative remedy is permissive (i.e., suit may be brought without exhausting the remedy). the court has usually held that the running of limitations is not deferred or tolled by such optional administrative con *12 sideration.[6] A series of recent cases, involving the right of veterans to appeal to the Civil Service Commission (under the Veterans’ Preference Act) from adverse personnel actions, may possibly be thought to have introduced an exception. In Love v. United States, 122 Ct. Cl. 144, 146, and Thomas v. United States, 125 Ct. Cl. 76, 79-80, the court ruled — on the assumption that the remedy was permissive only — that an appeal to the Commission did not defer or toll the statute of limitations. See also Gray v. United States, 124 Ct. Cl. 313. In Martilla v. United States, 118 Ct. Cl. 177, 179-180 — not a limitations case — the holding was that the plaintiff should have pursued his appeal to the Commission (i.e., that the appeal was required or mandatory) and that no cause of action existed until he did so. In Cuiffo v. United States, 131 Ct. Cl. 60, 63, 68, however, the court held pursuit of the Commission remedy unnecessary where the plaintiff had been in effect informed that he had either an appeal to the Commission or further review within his own agency (but probably not both); the opinion also stressed the reasons for considering the appellate remedy (i.e., appeal to the Commission) permissive rather than mandatory. In Adler v. United States, 134 Ct. Cl. 200, cert. denied, 352 U.S. 894, the court, although recognizing that appeal to the Commission was not mandatory, nevertheless refused in its discretion to consider a veterans-demotion case until appeal to the Commission had been completed. Finally, in Keeney v. United States, 150 Ct. Cl. 53, 55, the court ruled that, even though the claimant’s “appeal to the Civil Service Commission is merely permissive rather than mandatory,” limitations did not begin to run until after the Commission’s *13 decision, since that ruling would be binding on the employing agency and the administrative action would therefore not become final until the Commission had acted.
C. Disability retirement -pay eases.[7] The court has dealt with the limitations problem, in the disability retirement field, in over 30 decisions since 1954.[8] Without attempting to harmonize everything said in each of those opinions, we believe that the holdings, in totality, do fall generally into a rational pattern.
1. The claim accrues on final action of a board, not on release from active service. — The court has consistently held that Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore that no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act. See, e.g., Furlong v. United States, 138 Ct. Cl. 843, 845-846; Uhley v. United States, 128 Ct. Cl. 608, 611-612; Girault v. United States, 133 Ct. Cl. 135, 143-144; Odell v. United States, 134 Ct. Cl. 634, 638; Lipp v. United States, 157 Ct. Cl. 197, 199. No final holding of the court is truly inconsistent with this posi *14 tion; and there is no final holding that mere separation from the service without disability retirement, in and of itself, starts the limitations period. On the contrary, San Millan v. United States, 139 Ct. Cl. 485, 487, 497, 499, in which the Retiring Board was not requested until 3y2 years after release, is a recent direct holding that limitations runs not from release but from the later refusal to grant a Retiring Board; see also Proper v. United States, 139 Ct. Cl. 511, Patterson v. United States, 141 Ct. Cl. 435, 438, and Frederick v. United States, 150 Ct. Cl. 769, for comparable direct holdings. The recent Lipp opinion also recognizes this basis of the cause of action.[9] Thus, the court has uniformly applied to this type of case the doctrine (discussed supra) that where an administrative decision is mandatory the claim is not ready for suit until such a decision is had or is excused. That is the condition precedent to the accrual of the cause of action. Mere release from active duty without a Retiring Board (or request for one) or without disability retirement pay is not enough to start limitations running.
2. There is no tolling by further consideration after fined board action.- — -The court has also held, with one possible exception, that where a proper board has acted finally the run *15 ning of the statute is not tolled by later consideration by other boards or agencies. In particular, where full action by a Retiring Board had been had (or refused), later review by the Disability Review Board or the Correction Board does not toll the statute. Rosnick v. United States, 132 Ct. Cl. 1; Girault v. United States, 133 Ct. Cl. 135, 143-145; Duff v. United States, 133 Ct. Cl. 161; Levine v. United States, 133 Ct. Cl. 774, 779-780; Odell v. United States, 134 Ct. Cl. 634; MacFarlane v. United States, 134 Ct. Cl. 755; Soukaras v. United States, 135 Ct. Cl. 88, cert. denied, 352 U.S. 918; Barker v. United States, 135 Ct. Cl. 42, cert. denied, 352 U.S. 935; Levadi v. United States, 137 Ct. Cl. 97, cert. denied, 353 U.S. 917; Conlin v. United States, 137 Ct. Cl. 128, cert. denied, 353 U.S. 916; Hutchinson v. United States, 137 Ct. Cl. 889; Lipp v. United States, 157 Ct. Cl. 197. These cases hold that the final 'action of the first proper board to act (finally) is decisive for limitations purposes.
The possible exception is Frederick v. United States, 150 Ct. Cl. 769 (the opinion in which contains no now-relevant discussion of limitations). The plaintiff was discharged in 1945 after a Retiring Board found him disabled but his disability not service-connected; in 1952 he applied to the Disability Review Board which affirmed the Retiring Board’s findings; in March 1954 he applied to the Correction Board which (after proceedings the court held to be irregular) refused to grant him disability retirement; suit was begun in 1956. The court’s opinion does not refer to the prior cases on limitations to which we have just referred, and discusses that subject only in the context of deciding whether the plaintiff should recover his pay back to the date of his separation or only for the six years prior to suit; of the majority, Judges Madden 'and Littleton thought the former and the Chief Judge the latter, and the judgment was limited to the six prior years. (Judges Whitaker and Laramore dissented.) Since there is no explanation in the majority opinion, one must speculate as to basis for the silent holding that the entire claim was not time-barred. There are at least two possible rationales which would not conflict with the line of cases *16 beginning with Rosnick.[10] In any event, tbe absence of discussion in tbe opinion precludes us from treating Frederick as a “bard” or full precedent.
'3. In a number of situations tbe court bas beld that the final action of tbe first board to decide bas been delayed or deferred by one or another circumstance and therefore that tbe cause of action bas not accrued until the later time. In Uhley v. United States, 128 Ct. Cl. 608, tbe plaintiff was erroneously told by Air Force medical officers that his disabilities would not warrant retirement for disability and consequently be did not seek a Retiring Board when be was separated in December 1945; be asked for and was refused such a board in 1951 and applied to tbe Correction Board in 1952. Suit was brought in February 1958 (within six years of tbe latter two requests); tbe court held that limitations did not begin to run on his separation in December 1945 because bis failure to ask for a Retiring Board was excused by the misleading information. Furlong v. United States, 138 Ct. Cl. 843, 844, 846, is another case in which tbe officer failed to ask for a Retiring Board because be was misled. In Capps v. United States, 133 Ct. Cl. 811, and Loeb v. United States, 133 Ct. Cl. 937, tbe original Board action was held deprived of finality because the Secretary of War ordered that tbe case be reopened and reconsidered under a new regulation, and it was so reconsidered within six years of tbe commencement of the suit. In Suter v. United States, 139 Ct. Cl. 466, 468, 469-470, 471, cert. denied, 355 U.S. 926, the officer bad a Retiring Board (which did not act finally) and was released without retirement pay in 1946, but in 1949 and 1951 he was erroneously refused a new Retiring Board (to make a further evaluation); he applied to the Correction Board in 1953; suit was brought in 1954. The tentative action of the Retiring Board in 1946 was (in effect) held *17 non-final, and the statute of limitations further deferred by the erroneous refusal to grant the plaintiff subsequent reevaluation ; therefore the 1954 suit was not barred by the six-year statute. A similar case was Friedman v. United States, 141 Ct. Cl. 239, 254-256, in which the original Retiring Board (in 1947) did not purport to act finally and the officer’s claim was not finally denied until December 1952 (within the six-year period). See, also, to the same effect, Allin v. United States, 147 Ct. Cl. 459, 465, 471-2, 474-476 (initial board action not final); Weiner v. United States, 148 Ct. Cl. 445, 450, 455, 460-1, 463-4 (initial board action not final and Government erroneously refused later request for further consideration).
4. Where there is no Retiring Board, the claim accrues on action of the Correction Board. — The court has also held that claims were not barred where the serviceman was released (prior to the six-year period) without having or requesting a Retiring Board (and without being misled into failing to ask for one) and where the first board to which request was made was the Correction Board (which acted adversely or declined to act within six years prior to suit). In Proper v. United States, 139 Ct. Cl. 511, 512, 515, the first board to which the plaintiff (who was released in April 1948) applied (in 1954) was the Correction Board; suit was brought in May 1954. The court held that “because of the peculiar facts and circumstances * * * Correction Board proceedings were the only ones open to this plaintiff, and the only administrative action ever taken on his claim for disability retirement with pay was in connection with his application to that Board.” [11] In Patterson v. United States, 141 Ct. Cl. 435, 438, the plaintiff was released without a Retiring Board in March 1946 and did not seek relief until he applied to the Correction Board in January 1953; suit was begun in 1958. The court held broadly that the rule was *18 “that where a plaintiff has received no determination of his eligibility for disability retirement pay by any board until the correction board has acted, his cause of action accrues not at the time of his separation from the service, but at the time of the alleged wrongful action of the correction board, approved by the Secretary, in wrongfully refusing to correct the records and grant the plaintiff disability retirement with pay.” There was no suggestion that Patterson had good justification for failing to apply to the Eetiring Board.
Although they hold that limitations does not defeat the suit of an officer who first brings his claim for disability retirement to the Correction Board, the Proper and Patterson cases are not incompatible with the other decisions holding that the claim arises upon the final action of the Eetiring Board. The rationale of all the cases, taken together, is that Congress has given the function of deciding entitlement to disability retirement to the Secretary, acting with or through a statutory board, and that the claim does not accrue until final action on the basis of the determination of the first competent board to decide. As this court has said, “All of these boards, the Eetiring Board, the Disability Eeview Board, and the Board for Correction of Military Eecords act only in an advisory capacity to the Secretary of War. If his decision on the retirement rights of an officer is alleged to have been arbitrary, then the officer’s right to come to the court for redress accrues as soon as the arbitrary decision is rendered.” Girault v. United States, 133 Ct. Cl. 135, 144, quoted in Lipp, supra, 157 Ct. Cl. at 201, n. 2. Either the Eetiring Board or the Correction Board is a proper board to perform this function of advising the Secretary;[12] and where a Eetiring Board has not been had or requested, the officer’s application to the Correction Board together with the action of that Board take the place of the Eetiring Board’s function in triggering the statute of limitations. The Correction Board becomes the first proper board to act (or to be asked to act) on the matter, and the claim does not ripen until *19 that Board’s action is final. The single judicial claim — not a new cause of action — never accrues (under the general principles discussed supra) until the Correction Board’s decision. In that sense the Correction Board proceeding becomes a mandatory remedy; without it, the case in this court would be dismissed as premature on the ground that the plaintiff did not seek or obtain a final decision within the administrative hierarchy.[13]
5. The Lipp decision.—Lipp v. United States, supra, was a case in which the plaintiff requested a Betiring Board in 1948, and again in 1949 and 1950 (id. at 201). The opinion followed and was in accord with the BosnicJe line, governing instances in which there was final action of a Betiring Board more than six years before suit. Lipp was not a case (like Proper or Patterson) in which no Betiring Board was had or requested. Nothing in the opinion controls any other type of case than that before the court; the opinion does not govern a case in which no Betiring Board was requested or in which the Betiring Board’s action was not final, etc. Footnote 1 of the Lipp opinion does say that “it is questionable that an officer could accrue a cause of action by a request for retirement board proceedings after his release to inactive duty,” but the court also stresses that it was not necessary to decide that point. In prior cases the court has not indicated that a post-release request for a Betiring Board was *20 too late, at least if entertained or considered timely by the armed service itself. See Updike v. United States, 132 Ct. Cl. 627 (overturning ruling of the Comptroller General that reserve officers could not be determined to be eligible for disability retirement after their release from active duty); Adams v. United States, 127 Ct. Cl. 470, 475; San Millan v. United States, 139 Ct. Cl. 485, 487, 497, 499; Uhley v. United States, 128 Ct. Cl. 608; Furlong v. United States, 138 Ct. Cl. 843; Suter v. United States, 139 Ct. Cl. 466, cert. denied, 355 U.S. 926; Friedman v. United States, 141 Ct. Cl. 239; Allin v. United States, 147 Ct. Cl. 459; Weiner v. United States, 148 Ct. Cl. 445.
6. “New cause of action.” — The main burden of the present argument of the plaintiffs in this and related cases is that Correction Board action always gives rise to a new cause of action on which the statute will not run until six years after the Correction Board’s final action — regardless of prior determinations by the Retiring Board or the Disability Review Board. The only ruling of the court which gives real support to that contention is the interlocutory holding in Knight v. United States, 152 Ct. Cl. 298, which was expressly overturned in the Lipp opinion.[14] We do not find any other decision (as distinguished from general observation) of the court which rests on or invokes this theory.
(a) The Knight decision is contrary to the holdings in the cases, discussed supra, refusing to toll the statute where final action of a proper board has been had, and relief is then sought from other boards (including the Correction Board) .[15] It is said by the present plaintiffs that in those cases no point was made that action by the Correction Board grounded a new cause of action; we are not certain that this is so but in any event it is implicit in those rulings that the only claim upon which suit could be brought necessarily ac *21 crued upon final action by the initial board. That is the foundation-stone of the rationale of those decisions. It would be wholly technical to distinguish them on the ground that the plaintiffs had not formulated their arguments in terms of the creation of a new, separate, cause of action as a result of the Correction Board’s decision. If the present plaintiffs’ theory is to be adopted, those cases would, in effect, have to be overruled, at least partially.[16] On the other hand, in overruling Knight, the Lipp decision did not overrule any other holding if Lipp is confined to the only class it purports to cover (i.e., prior final board action more than six years old and only Correction Board action, in a review capacity, within the limitations period) ,[17]
(5) It is true that there are expressions in some of the other opinions of the court which can be read, if isolated from the facts and holding of the particular case, as giving support to the general theory that Correction Board action engenders a fresh cause of action. None of these expressions is clear, decisive, or truly relevant, or represents a holding.
First, there are general statements that arbitrary action by the Correction Board might ground a claim (Rosnick v. United States, 132 Ct. Cl. 1, 5, 6; Carlinv. United States, 121 Ct. Cl. 643; Betts v. United States, 145 Ct. Cl. 530). This is correct as a generalization, but it does not mean that where a claim is judicially barred by limitations an arbitrary refusal by the Correction Board to grant it will necessarily create a new judicial cause of action.[18] Second, there are cases in which the claim was held free of limitations — for one or another of the reasons discussed above, which do not depend on the creation of a new claim through Correction Board action — in which the opinion also uses language which *22 is said to suggest that a new claim existed (Friedman, v. United States, 141 Ct. Cl. 239, 254-256, explicitly leaving the issue open; Towell v. United States, 150 Ct. Cl. 422, 433, reference to everything prior to Correction Board action being barred by limitations; Proper v. United States, 139 Ct. Cl. 511, 512-13, possible implication that Secretary’s action in 1955, after Correction Board proceedings, created the claim). But these passing, somewhat ambiguous, observations do not indicate that (except in Knight) the court as a whole has accepted, or decided on the basis of, the theory thait Correction Board action normally creates a new claim.
Third, there are cases, not involving eligibility for disability retirement, in which the court has allowed a recovery which takes account of more than a six-year period, on the ground that the claim was timely because founded on the action of a board. In Sedbrook v. United States, 135 Ct. Cl. 190, the initial Retiring Board held in 1946 that the plaintiff was not entitled to disability retirement, but two years later (in 1948) the Navy reopened his case (at his request) and a new Retiring Board held that he was disabled. He was not, however, paid retired pay for the period between his release from duty in 1946 and his placement on the retired list in 1948. Suit was brought in May 1954. The court held (following earlier decisions such as Holt v. United States, 134 Ct. Cl. 801, Hamrick v. United States, 120 Ct. Cl. 17, and Ramsey v. United States, 123 Ct. Cl. 504) that since the second board had held his disability incident to service it necessarily followed as a matter of law that the plaintiff was entitled to retirement pay from the date of his release (but recovery was limited to the six-year period prior to the bringing of suit). Similarly, in Brown v. United States, 141 Ct. Cl. 557, the serviceman was released in 1946 (after appearing before a Retiring Board) without disability retirement pay. On May 10, 1949, the Disability Review Board reversed this finding, but he was not given disability retired pay for the period from 1946 to 1949. In 1952, he applied to the Correction Board to modify the records so as to entitle him to this back pay, but the Board refused to do so. Suit was filed on May 9, 1955, within six years of the Disability *23 Review Board’s decision. Judgment was given for the full amount requested (unlike Seabrook where it was limited to the six prior years). See also Caddington v. United States, 147 Ct. Cl. 629, 635 (full amount). In Eicks v. United States, 145 Ct. Cl. 522, 526-527, tbe plaintiff, who had been granted disability retirement in 1944, sought additional retired pay on the basis of accumulated leave which he said he should have been allowed before his separation in that year. In 1954 he applied to the Correction Board to change his records; the majority of the Board agreeed with him but the Secretary agreed with the dissenter and denied relief. Suit was filed on December 2, 1955, for additional back pay from 1944 to September 1949 (at which time the Career Compensation Act changed the method of computation). The court held the plaintiff entitled to recover. There was no bar of limitations, the court said, because “this present cause of action arose on the refusal of the Board, after the Secretary’s disapproval, to correct plaintiff’s record” and “the right to recover depends on whether the refusal to correct the record was arbitrary.” On the merits the court held the plaintiff entitled to recover as a matter of law because the statutes and regulations in effect in 1944 gave him accumulated leave as a matter of right.
These cases — Seabrook, Brown, Caddington, and Eicks— stand not for the general proposition that any action of the Correction Board creates a new cause of action (for limitation purposes), but for a considerably narrower rule. Brown, Seabrook and Caddington clearly dealt with implementation of a favorable board decision and in that sense the claim was, and had to be, founded on the board’s own action. It was a necessary prerequisite.[19] Eicks can be viewed in the same light, as implementing the favorable decision in 1944 granting the plaintiff disability retirement. The court thought it necessary to correct the plaintiff’s records to show *24 the accumulated leave (in order to compute the additional pay he sought) and only the Correction Board could make the required correction.[20]
7. Summary: As our discussion has shown, the main course of the court’s decisions on the time-bar in the disability retirement field reveals a well-structured design:
(a). The judicial claim for disability retirement pay does not accrue on release from active duty but rather on final action of a board competent to pass upon eligibility for disability retirement (or upon refusal of a request for such a board).
(5). Normally, the Retiring Board is the proper board, but where the claimant has not had or sought a Retiring Board, his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement).
(o). A board’s action (or failure to act) is not final if (i) the claimant has been misled, (ii) the board’s decision is tentative and invites reopening, (iii) the armed service itself reopens the case, or (iv) there are other circumstances depriving the action or non-action of finality.
(d). Once a final decision is had, the claim accrues, the limitations period begins to run, and there is no tolling of the statute by reason of further applications to other boards or agencies (including the Correction Board).
*25 (e). Once a final decision is had, adverse determinations by other boards, including the Correction Board, do not give rise to a new cause of action.
(/). A claim for entitlement to disability retirement status and pay — of the type requiring discretionary action by a board and the Secretary — is not a “continuing claim” but accrues as a whole (once it accrues). However, other types of pay claims not dependent on a board finding — including claims for increased retirement pay because of new legislation, etc. — are “continuing” claims.
n. DOES ACTION BY THE COERECTION BOARD CREATE A NEW claim;
The plaintiffs in this and other cases also urge that, regardless of the course of our prior decisions, we should now hold that action by the Correction Board gives rise to a new cause of action, despite a prior ruling by a Betiring Board or the Disability Beview Board, on which the claimant has six years to sue. In deference to these requests, we have carefully considered the-issue de novo and afresh. We have again concluded that where, as in the Lipp type of case, the Correction Board is in effect reviewing a prior adverse determination by a Betiring Board or the Disability Beview Board (or a refusal to convene such a board), the Correction Board’s adverse decision does not give rise to a new cause of action. We continue, however, to agree with our past rulings that, where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant’s eligibility for disability retirement, the single cause of action accrues upon the Correction Board’s final decision.
A. Judicial review. The normal rule, where a proper administrative tribunal has denied or refused to consider a claim and further administrative remedies are permissive not mandatory, is that the judicial cause of action arises immediately upon the initial tribunal’s action and does not start again upon a subsequent administrative decision affirming that holding. It is said, however, that that rule should not apply to the Correction Board remedy because Congress *26 intended that there be judicial review of all Correction Board decisions. We find this argument' unpersuasive.
1. It should be noted, first, that it is far from plain to what extent any judicial review of Correction Board action was affirmatively intended by Congress. The statute and the legislative materials are not clear and arguments can be made both ways.[21] The Government has often argued that Congress did not intend any review of Correction Board decisions. But for us the answer has already been given by the court’s decisions — which have consistently held that in disability retirement cases arbitrary actions of the Correction Board, if challenged within the applicable limitations period, can be reviewed here. See, e.g., Lemly v. United States, 109 Ct. Cl. 760; Prince v. United States, 127 Ct. Cl. 612, 617; Gordon v. United States, 129 Ct. Cl. 270, 277; Hiett v. United States, 131 Ct. Cl. 585; Wales v. United States, 132 Ct. Cl. 765, 771; Suter v. United States, 139 Ct. Cl. 466, cert. denied, 355 U.S. 926; Proper v. United States, 139 Ct. Cl. 511; Friedman v. United States, 141 Ct. Cl. 239; Patterson v. United States, 141 Ct. Cl. 435, 437-8; Eicks v. United States, 145 Ct. Cl. 522; Frederick v. United States, 150 Ct. Cl. 769; Allin v. United States, 147 Ct. Cl. 459; Weiner v. United States, 148 Ct. Cl. 445; Siegel v. United States, 148 Ct. Cl. 420. We see no adequate reason why the rule laid down by these (and other) cases should now be overturned. The decisions of Retiring- Boards and the Disability Review Board are not immune from scrutiny under the court’s holdings, and there is insufficient indication in the statute creating the Correction Board — or the statute’s legislative history — that an exception should now be made for the Correction Board (if suit is timely brought).
2. But it does not follow from the general existence of judicial review for Correction Board decisions that those decisions create a new substantive cause of action which has its own, new, limitations period. That a tribunal’s rulings are subject to judicial review means that the administrative decision is open to scrutiny by a court, if a timely judicial proceeding is filed — not that the administrative tribunal’s *27 decision, in itself, becomes the new measure and the new beginning of the plaintiff’s judicial rights. There is a profound difference between a legislature’s providing for further review of a ruling on a cause of action and its creating a new and independent cause of action. District Court decisions are reviewable in the Courts of Appeals, but the appellant’s cause of action is grounded on the various substantive statutes or other substantive federal law (or state law in diversity cases), not on the provisions of the Judicial Code establishing review of District Court cases by the Courts of Appeals or giving the District Courts jurisdiction of that type of case. Similarly with the administrative agencies. In court cases coming from the National Labor [Relations Board or the Securities and Exchange Commission, for example, the individual seeking judicial relief places his claim on the substantive provisions of the National Labor [Relations Act or the Securities Act, not on the provisions in those statutes for judicial review of agency proceedings. Judicial review and substantive claim are entirely separate concepts. The former is usually provided to see whether the latter is valid or has been properly enforced, but the establishment of review does not ipso faeto create a new substantive claim.
In short, as applied to our problem, the existence of judicial review does not, in itself, supply any basis for asserting that the limitations period runs from the time of the Correction Board’s decision. All that the existence of judicial review means is that the Board’s decision will be reviewed, in a proper case, if a timely suit is brought. That is what the House Committee meant, in part, when it said that the courts would not be precluded from reviewing Correction Board cases “under appropriate circumstances” (H. Bept. No. 449, 82d Cong., p. 8).
3. It may be said, however, that on this view it is quite possible that the six-year statute of limitations will have run before completion of the Correction Board proceeding, and therefore that there will be no judicial review of the Board’s determination even if it is wholly arbitrary and review would be “appropriate” if suit were timely brought *28 (cf. Knight v. United States, 152 Ct. Cl. 298, 300). This is a possibility, but there are, we -think, three sufficient answers to the argument.
The first is that it is inherent in all statutes of limitations that claims otherwise justifiable and justiciable will be denied because suit is not brought in time.[22] Nor is it unique in federal law to have an administrative remedy immune from judicial review if a timely proceeding is not commenced. For example, the ten-year limitations statute for the General Accounting Office (31 TJ.S.C. 7la) means that many improper denials of claims by that office cannot be redressed in this court which is limited by the six-year statute — although those very claims could have been vindicated here if suit had been brought in time. Congress has certainly shown as much intention to have adverse rulings by the Accounting Office reviewed by this court as it has Correction Board decisions, but if suit is not brought within six years of the original claim such review cannot be had, no matter how erroneous the later Accounting Office ruling may be. See also Cosmopolitan Manufacturing Co. v. United States, No. 168-60, and Arlene Coats v. United States, No. 123-60, 156 Ct. Cl. 142, 297 F. 2d 546, cert. denied in No. 123-60, 371 U.S. 818.
The second answer is that the plaintiff can bring suit and obtain judicial review within six years of his Retiring Board proceeding; he can then ask the court to suspend the judicial proceedings to allow resort to (or completion of) Correction Board proceedings (if it is desirable to have Correction Board review). See this suggestion in Odell v. United States, 134 Ct. Cl. 634, 645-6 (original opinion) and Ogden v. Zuckert, 298 F. 2d 312, 317 (C.A.D.C.). In that way there can be full completion of the administrative remedy, if that is appropriate.
Third, a claimant who has had a Retiring Board proceeding — or who is sufficiently aware of a possible disability *29 tbat be requests a Retiring Board (and is turned down)— ordinarily bas adequate notice of bis potential entitlement to disability retirement pay so tbat be can and should bring suit within six years; be is not caught unawares by the sudden development of a latent or progressive condition tbat be reasonably thought non-disabling at the time of bis separation. Such a claimant should be fully able to protect himself by bringing suit in time.[23]
B. Exhaustion of administrative remedies.
1. Another argument is tbat a Correction Board proceeding should be viewed as mandatory not permissive, and therefore as a necessary prerequisite to the accrual of a cause of action for disability retirement pay in this court.[24] The District of Columbia Circuit recently held in Ogden v. Zuckert, 298 F. 2d 312 (Dec. 1961), that exhaustion of Correction Board proceedings was not required — agreeing with this court’s Girault decision (and those following it). Again we see no adequate reason to upset the applecart, at this late stage, by now declaring that exhaustion is necessary, and thus barring all those who, following this court’s prior decisions, failed to apply to the Correction Board. In Reed v. Franke, 297 F. 2d 17 (Nov. 1961), the Fourth Circuit did hold that exhaustion of administrative remedies was required before resort to the injunctive process, but that case involved a military discharge — and the Court of Appeals interpreted 10 U.S.C. 1553 as providing a mandatory remedy before the Discharge Review Board for servicemen dissatisfied with their discharges. The Correction Board was only incidentally involved, and the court did not hold the Correction Board proceedings (as distinguished from a proceeding before the Discharge Review Board) to be a required prerequisite. There is no conflict with Ogden v. Zuckert, supra.
*30 2. Another facet of the exhaustion argument is that, even though resort to the Correction Board is permissive not mandatory, the cause of action does not accrue, if an application is made to the Board, until its final decision. Reliance is placed on Keeney v. United States, 150 Ct. Cl. 53, decided June 8, 1960, discussed supra, in which the court declared that, although a veteran’s appeal to the Civil Service Commission from adverse personnel action is permissive, still limitations does not run until the Commission’s final decision. It is not at all clear, and we do not decide, that under Keeney the veteran’s appellate remedy is truly permissive, but in any case we shall not apply the Keeney rule— even if it be considered to be that a wholly permissive remedy tolls the statute — to disability retirement cases. Appeals to the Civil Service Commission in veterans’ personnel matters must normally be taken within a short time after the adverse action by the employing agency. A six-year period from the agency’s decision would almost never run before appeal had to be taken, and normally the appeal would be concluded in a few months. Accordingly, the employee is not in a position, by appealing, to postpone the final administrative decision for any lengthy period. On the other hand, until recently, review by the Correction Board or the Disability Review Board could be sought well after the end of the six-year span and a claimant who had allowed the six-year limitations period to elapse could easily revive his judicial claim by applying to one or both of these Boards. The claimant could, in effect, pick his own time for suit; he could delay it for many years if he wished to do so, or he could bring it on at once if that was his desire. The long period for applying to the Correction and Disability Review Boards makes it inadvisable and inappropriate to carry over the suggested rule to the disability retirement area. The potentialities of delay and manipulation are too great.
C. Tucker Act. Still another contention is based on the Tucker Act (now 28 U.S.C. 1491) which gives this court jurisdiction “to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United *31 States, or for liquidated or unliquidated damages in cases not sounding in tort.” It is argued that, once the Correction Board has acted, the claim is founded upon the 1951 Act providing for Correction Boards to change military records to correct errors or remove injustices. But this is again to confound a procedural remedy with a substantive cause of action. In disability retirement cases the claimant’s cause of action rests upon the retirement legislation (now 10 U.S.C. 1201, et seq.) which gives servicemen disabled in the course of active service the substantive right to disability retirement. The Correction Board statute merely provides one remedy for enforcing that right, just as the provisions for Retiring Boards and the Disability Review Board also provide administrative remedies. The Act of Congress upon which the claim is founded — in the sense of the Tucker Act— is the substantive retirement statute, not the provision for boards or other methods for implementing that right. As we have pointed out, in retirement cases the Correction Board is normally a reviewing agency to decide whether prior administrative action under the retirement legislation has been erroneous or unjust.
We have already noted the relevant analogies showing that the Correction Board statute is not the basis of the claim. The legislation upon which is found'd a federal claim pursued in the District Courts is the substantive statute, not the provisions of Title 28 U.S.C. providing for jurisdiction in the District Courts; claims for relief before administrative agencies rest on various substantive provisions of law (such as the unfair labor practice section of the National Labor Relations Act), not on the provisions establishing the administrative tribunal or the procedure to pass upon the demands. If the Correction Board statute is the Act of Congress on which the claim is founded — thus commencing a new cause of action — there would be no reason why a refusal by the General Accounting Office, acting under its general power to pay and settle, to satisfy a claim between six and ten years after accrual (see 31 U.S.C. 7la) should not create a new judicial cause of action allowing six more years for suit in this court. That, of course, has never been the law (e.g., Marr v. United States, 123 Ct. Cl. 474, 479-480, cert. denied, *32 345 U.S. 956), but it would bave to become the rule if the plaintiffs are right that the Correction Board statute of 1951 gives them a new cause of action because it provides that the Board shall review their claims and grant them if just. The 1951 Act is no different in kind from comparable federal statutes providing a remedy for rights founded on other legislation or other regulations. See, e.g., Cosmopolitan Manufacturing Co. v. United States, No. 168-60, and Arlene Coats v. United States, No. 123-60, 156 Ct. Cl. 142, 297 F. 2d 546, cert. denied in No. 123-60, 371 U.S. 818.
Moreover, if every Correction Board decision creates a new cause of action under the 1951 Act — a cause of action which is judicially cognizable — it would follow that every ruling of the Boards, not merely monetary cases (such as disability retirement claims) but all rulings on the manifold types of disciplinary and other questions coming before the Boards, would be reviewable in the courts of the District of Columbia by declaratory judgment action or suit for injunctive relief under 28 U.S.C. 1331 (federal question jurisdiction) and the pertinent provisions of the District of Columbia Code (Sections 11-305 and 11-306). We are not ready to accept the proposition that every non-monetary decision of the Board thus becomes reviewable even though the initial military action which is sought to be corrected before the Board would not be reviewable even if arbitrary[25] — or that Congress so intended. The correct position, it seems to us, is that certain of the Board’s decisions are judicially reviewable (if a timely suit is begun) and others may well not be reviewable. Where the underlying claim is of the reviewable type, review may be had, but the 1951 Act would not create reviewability where the nature of the claim precluded it.
D. Other considerations. Two other potent considerations argue against accepting the thesis that Correction Board action creates a new, independent, cause of action, upon which suit may be brought within six years.
1. The first is that it is unusual to have two or more causes of action stemming from the same events or transactions, but *33 arising at wholly different times. Theoretically, it would not be impossible for Congress to make such provision, but in the absence of some definite legislative indication to that effect it is preferable to follow the normal principle that out of one set of facts and circumstances involving the claimant’s separation from service there arises but one claim for the same kind of relief (money, in the case of disability retirement pay claims). This is all the more true since our limitations statute is phrased in terms of the “first” accrual of the claim. 28 U.S.C. 2501. The legislative emphasis on first accrual cautions against multiplication of monetary claims successively arising out of essentially the same facts.
The plaintiffs’ theory would mean that a claimant might have three separate causes of action on which suit could be brought successively. He could sue immediately after the Retiring Board decision and if he lost at that time could appeal (in many cases) to the Disability Review Board and then file another suit and if he lost again could then proceed before the Correction Board and, losing there, file still another suit. These successive suits would not be subject to a defense of res judicata (since the claims would be different, under the theory of a “new cause of action”) and might even avoid collateral estoppel on the basis of some new aspect of disability, etc. The claimant could thus have three separate and successive causes of action in this court, each with its own six-year limitations period.[26]
2. Another reason for declining to recognize the Correction Board decision as starting a new six-year period is that most of these disability retirement cases involve an appraisal of the facts of the claimant’s health when he left the service a considerable time before suit (usually in 1946-1948). In World War II cases, review by the Correction Board could be sought until October 1961; review by the Disability Review Board could be sought until fifteen years after release or retirement. Added to these long periods must be the significant factor that this court has been allowing the creation of full de novo records in disability retirement cases. As the *34 court has pointed out (Odell v. United States, 134 Ct. Cl. 634, 645; Gordon v. United States, 134 Ct. Cl. 840, 843), ancient controversies, requiring the court to evaluate facts of the distant past, would be presented if claims were regularly allowed to wait until after the Correction Board or Disability Beview Board proceedings. One of the prime objectives of the statute of limitations is to prevent factual issues from being tried too long after the events occurred — with witnesses dead or gone, records lost or destroyed, and memories confused or dimmed — at a time when the past cannot be reconstructed with any pretense of accuracy.
It is true, of course, that the same lengthy time can elapse where the Correction Board is the first Board to act (see Proper v. United States, 139 Ct. Cl. 511, and Patterson v. United States, 141 Ct. Cl. 435, discussed supra) as where the Correction Board is reviewing a Betiring Board’s earlier decision. The answer is that Congress has deliberately given servicemen this lengthy period in which to apply to the Correction Board although no Betiring Board has been called or asked; in effect, Congress has allowed many servicemen a very long time in which to seek retirement pay and has not insisted that application be made at or upon release from service. We do not depart from our prior decisions embodying the principle that the claim for disability retirement pay does not accrue until the final action of a proper board simply because we may possibly believe too long a time has elapsed or been allowed. But it is worth noting that in cases in which the lapse of time puts the Government at too great a disadvantage in its proof before the Correction Board (or in this court) a rejection of the claim by the Board may well not be arbitrary in view of the difficulties of proof due to the passage of the years.
The other side of the coin is that veterans who never applied for a Betiring Board because they did not know they were ill or did not appreciate the progressive or serious character of their disease or disability will not be cut off by limitations from pursuing their late-discovered claim before the Correction Board and this court. We cannot, of course, know the precise statistics but it seems probable that the class of those who never had or sought a Betiring Board and later *35 applied to the Correction Board includes a large proportion of men whose disabilities were discovered or became aggravated after release. On the other hand, those servicemen who were sufficiently alerted to the possible existence of a disability to ask for or appear before a Retiring Board will properly be cut off after six years from that time; their request for (or appearance before) a Retiring Board would normally put them on adequate notice of the existence of their claim.
In discussing this double need to have the judicial determination of the facts take place at a moment not too far removed from the actual events and also to allow claimants an adequate (but not overly long) period to bring suit, we emphasize that we do not propose to make our rulings on these limitations issues turn on whether, in the particular case then before us, it would be easy or hard to reconstruct the facts accurately. Of course, the formulation of the general rules can and should take account of different recurring categories of factual situations; one reason, for instance, why we believe that the statute does not commence to run until Correction Board action where it is the first board, is that many or most of those will be cases where the serviceman did not know or appreciate his disability at the time of his release. But the classification is general and does not depend on an appraisal of the individual facts or the appeal of the particular case.
E. Conclusions. Our conclusion on de novo consideration is that the court has been correct in its implicit holding, in disability retirement pay cases, that a decision by the Correction Board does not create a new claim founded on the 1951 Correction Board legislation. But we also adhere to the holdings that, where a Retiring Board has not been had or requested, the claim based on the retirement legislation does not accrue until final denial by the Correction Board; in that event, the Correction Board action does not create a new claim but simply ripens or accrues the plaintiff’s single claim.
We believe that the general rules set forth at the end of Part I, supra, which we now reaffirm, (a) accord with the trend of our time-bar rulings in disability retirement pay cases; (b) are in harmony with the main line of this court’s *36 prior limitations decisions in the pay field generally; (c) are in harmony with the general principles governing the statute of limitations; (d) are fair to the plaintiff in giving him adequate time to bring suit and to protect his rights in court; (e) are fair to the Government in that they follow established general principles and Congressional legislation, and would not normally allow too great a time to elapse between suit and the facts on which the claim is predicated; (f) do not depend upon an ad hoc evaluation whether the particular claimant deserves a chance to recover or not; and (g) are sufficiently well-defined for both court and counsel to follow. Moreover, we believe that neither plaintiffs nor the Government can properly complain that the court has unfairly hurt them by refusing to follow past rulings; the state of the prior decisions is such that neither side can correctly argue that it has been lulled into action or inaction by a series of prior decisions which we would now be refusing to follow.[27] On the contrary, as we have said, in our view the rules we affirm today conform well with the pattern fairly marked by our prior cases.
HI. THE PRESENT CASE
The present case is almost identical with the Lipp case which we today reapprove. The decedent was accorded a Retiring Board before his release from active service in January 1947. He died in 1958. Relief was not sought from the Correction Board (by his wife) until 1960, and this suit was begun in that year. The only problem is whether the 1946 Retiring Board’s recommendation that the officer be reevaluated at the end of six months deprived its action (and his release from service) of the necessary finality so that no cause of action accrued until the denial by the Correction Board in 1960. Cf. Suter v. United States, 139 Ct. Cl. 466, 468, 469-70, 471; Friedman v. United States, 141 Ct. Cl. 239, 254-56; Allin v. United States, 147 Ct. Cl. 459-65, 471-72, 474-76; Weiner v. United States, 148 Ct. Cl. 445-50, *37 455, 460-61, 463-64. We do not think that is so in this case since the officer, after his release and prior to his death in 1958 (11 years after his release), did not make any effort to obtain the contemplated reevalnation. Whether or not Dr. Friedman made a request for reevaluation in December 1946, before his final release from active duty on January 30, 1947,[28] it is undisputed that he did nothing further and there is no adequate excuse given for his doing nothing from 1947 to 1958. See War Department Circular No. 303, 9 Oct. 1946, par. 185 (requiring written application for reevaluation). In these circumstances, the cause of action accrued before 1954 (six years prior to suit) since he did nothing about his claim during the entire period from 1947 through 1953. In comparable cases in which the Retiring Board suggested later reevaluation and the court held that the Board’s action was not final because of that recommendation, the officer made efforts within one, two, or three years to obtain the promised reevaluation; none delayed anywhere near as long as the officer in this case. See Friedman v. United States, 141 Ct. Cl. 239; Allin v. United States, 147 Ct. Cl. 459-65; Weiner v. United States, 148 Ct. Cl. 445.
Accordingly, we hold that this suit is wholly barred by limitations. Plaintiff’s motion for summary judgment is denied and the defendant’s motion for summary judgment is granted. The petition will be dismissed.
Dureee, Judge; Laramore, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
APPENDIX
The legislative history is quite inconclusive with respect to preclusion of judicial review of Correction Board determinations.
1. The position that Congress affirmatively intended judicial review of Correction Board actions is founded upon (a) the deletion from the finality provision of the Correction Board statute (now 10 U.S.C. 1552, formerly 5 U.S.C. 191a; Act of October 25, 1951, 65 Stat. 655) of any reference to the *38 courts; (b) some colloquies at the House hearings at which certain Congressmen indicated their expectation that judicial review would be accorded; (c) the absence of any finality provision explicitly applying to the courts, and (d) the statement in the committee report that “the courts of the United States should not be precluded from reviewing such cases under appropriate circumstances.” See Jones, Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges, 57 Col. L. Rev. 917, 967-971 (Nov. 1957); Friedman v. United States, 141 Ct. Cl. 239; Madden, J., dissenting in Haislip v. United States, 152 Ct. Cl. 339, 344; Brief of Reserve Officer Association, amicus curiae, in Lipp case, pp. 39-40. Taken together with the general principle normally favoring limited judicial scrutiny of administrative action,[29] these materials in the legislative history do furnish support for the view that all judicial review was not precluded. However, these materials go no further than to sustain the proposition that the types of Correction Boards rulings which are reviewable are those which would also be reviewable if made by other entities within the Defense Department. Correction Board proceedings would not render reviewable those substantive rulings which would otherwise be immune from review.
2. On the other hand, there are also indications in the legislative history pointing toward the conclusion that Correction Board decisions are not reviewable at all. First, it is clear that the Correction Boards were initially authorized in 1946 to provide an administrative substitute for the enactment of private bills for the correction of military or naval recoi’ds; and such private laws were, of course, not reviewable by the courts (except for constitutionality); since the Correction Board stands in the place of such private legislation it can be argued that Board action should be equally immune from judicial review. Second, the original finality clause proposed for the 1951 amendment (the clause which initially provided that Board decisions “shall be final and conclusive * * * including review by the courts * * which was later modified to omit the reference to the courts) *39 was introduced with reference only to subsection (b), the money settlement section,[30] and not with reference to subsection (a), which was the general provision granting power to the Secretaries to make corrections to remedy injustice or error. From the House hearings there is ground for the view that the reason this finality provision was modified to delete all reference to the courts, and transferred from subsection (b) to subsection (a), was to make sure that the General Accounting Office (and this court) would not be precluded from passing on the monetary correctness of sums owing to a claimant as a result of a favorable decision by the Board, i.e., a Board decision correcting a military record in such a way that money would be owing the claimant. The General Accounting Office stressed its concern with compensation and not with the substantive aspects of a Board decision (see the dissent in Haislip, supra), and the changes in the finality clause appear to have been made (at least in part) to meet these objections. After these changes were made, there were statements in the course of a colloquy 'between Representative Vinson, the chairman of the full committee, and Representative Smart, the spokesman for the subcommittee, which seem to say (without being explicit as to judicial review) that Congress intended the Secretary’s authority to be final and conclusive except for computation of amounts (See I Hearings before the House Committee on Armed Services [No. 27], Full Committee Hearings on * * * H.R. 1181 * * *, 82d Cong., 1st Sess., pp. 600-601 (June 5, 1951)).
This legislative history can be argued to define the “appropriate circumstances” (the term the Committee Report used, H. Rept. No. 449, 82d Cong., p. 3) which Congress envisaged for judicial review as being solely the question of the determination and computation of the amounts due as a result of a correction made by the Secretary. Once the Secretary has effected a correction which would entitle the applicant to recover money from the United States, under the Correction Board statute he cannot properly deny the applicant all the monies to which his entitlement has been *40 established by or as the result of a Correction Board proceeding. These, it can be said, are the only “appropriate circumstances” for judicial review to which the legislative history had reference. The earlier colloquy at the hearings involving Congressmen Doyle and Clements — on which reliance has been placed (see Friedman v. United States, 141 Ct. Cl. 239, 257)[31] — can be said to represent only their own views and not the position of the subcommittee, or the full committee, let alone of the House or the Senate as a whole.

 See Bachelor v. United States, 8 Ct. Cl. 235, 238-239 ; Ellsworth v. United States, 14 Ct. Cl. 382, 395, aff’d on other grounds, 101 U.S. 170; Blake v. United States, 103 U.S. 227, 237; Watson v. United States, 21 Ct. Cl. 511, aff’d 130 U.S. 80, 83; Moser v. United States, 42 Ct. Cl. 86, 49 Ct. Cl. 285, 58 Ct. Cl. 164, aff’d 266 U.S. 236; Brown v. United States, 68 Ct. Cl. 734, 739; Caudle v. United States, 72 Ct. Cl. 331, 333-334; Page v. United States, 73 Ct. Cl. 626, 631; Moore v. United States, 76 Ct. Cl. 753, 754; Standerson v. United States, 83 Ct. Cl. 633, 636; Thomson v. United States, 79 Ct. Cl. 224, 226; Dene v. United States, 89 Ct. Cl. 502, 506; Commings v. United States, 89 Ct. Cl. 498, 501-2; Hornblass v. United States, 93 Ct. Cl. 148, 151, 156; Long v. United States, 93 Ct. Cl. 544, 546, 550; Reynolds v. United States, 95 Ct. Cl. 160, 161; Lake v. United States, 97 Ct. Cl. 447, 450 ; Smith v. United States, 98 Ct. Cl. 392, 396-7; Sayers v. United States, 102 Ct. Cl. 791; Hermann v. United States, 113 Ct. Cl. 54, 59-61; Neff v. United States, 113 Ct. Cl. 1; Pacific Maritime Assn. v. United States, 123 Ct. Cl. 667, 678; McCormick v. United States, 124 Ct. Cl. 111, 113-114; Hart v. United States, 125 Ct. Cl. 294, 296; Winfree v. United States, 125 Ct. Cl. 853, 857; Lowry v. United States, 125 Ct. Cl. 598; Mistretta v. United States, 128 Ct. Cl. 41; Villarta v. United States, 129 Ct. Cl. 748, 751 (claim for “overseas allowances”); O’Brien v. United States, 130 Ct. Cl. 713; Gordon v. United States, 134 Ct. Cl. 840; Jalbert v. United States, 147 Ct. Cl. 439; Roberts v. United States, 151 Ct. Cl. 360, 363; Haislip, et al. v. United States, 152 Ct. Cl. 339.

 For recent examples of references to this doctrine, see Broche v. United States, 157 Ct. Cl. 784; McGrath v. United States, 157 Ct. Cl. 791.

 See, also, Withers v. United States, 69 Ct. Cl. 584, 587, holding that In the normal case consideration by the General Accounting Office Is unnecessary and the statute of limitations is not tolled during such consideration. The Accounting Office is not normaUy á deciding tribunal. But cf. Thomson v. United States, 79 Ct. Cl. 224, 226-7, for a special statute requiring resort to that agency.

 See, also, Tserioni v. United States, 94 Ct. Cl. 142, 147, cert. denied, 314 U.S. 668; Utah Power & Light Co. v. United States, 67 Ct. Cl. 602, 606; King v. United States, 48 Ct. Cl. 371, 375.

 See Croghan v. United States, 116 Ct. Cl. 577, 587 (removal); Siskind v. United States, 116 Ct. Cl. 809 (same); Gray v. United States, 124 Ct. Cl. 313, (appointment); Harmon v. United States, 124 Ct. Cl. 751, 754-5 (discharge); Thomas v. United States, 125 Ct. Cl. 76, 79-80 (reduction in grade) ; Group v. United States, 125 Ct. Cl. 135, 136-137 (same); Goodwin v. United States, 127 Ct. Cl. 417 (reinstatement order by Civil Service Commission creates new cause of action for bach pay illegally withheld, even beyond six years); Palmer v. United States, 129 Ct. Cl. 322, 325-326 (demotions-removal); Villarta v. United States, 129 Ct. Cl. 748, 751 (claim for difference in pay — an “appointment” claim) ; O’Brien v. United States, 130 Ct. Cl. 713, 714 (reinstatement at lower grade) ; Riley v. United States, 130 Ct. Cl. 113 (demotion); Goldstein v. United States, 131 Ct. Cl. 228, 232-3 (military discharge); Upton v. United States, 132 Ct. Cl. 355, 358 (demotion); Feldmem v. United States, 149 Ct. Cl. 22 (discharge); see also Dorer v. United States, 115 Ct. Cl. 83 (all sums sought were for periods prior to six years); Love v. United States, 122 Ct. Cl. 144 (same). Cf. Cannon v. United States, 137 Ct. Cl. 104 (no opinion of the court) and McCormick v. United States, 124 Ct. Cl. 111 (special status of claims under the Selective Training and Service Act).

 See, e.g., Battelle v. Unites, States, 7 Ct. Cl. 297; Carlisle v. United States, 29 Ct. Cl. 414; Curtis v. United States, 34 Ct. Cl. 1; Cohen, Goldman & Co., Inc. v. United States, 77 Ct. Cl. 713, 730, cert. denied, 290 U.S. 681; Hendricks v. United States, 81 Ct. Cl. 609; Pink v. United States, 85 Ct. Cl. 121, 124; John P. Moriarty, Inc. v. United States, 97 Ct. Cl. 338; Ylagan v. United States, 101 Ct. Cl. 294; L. E. Myers Co., Inc. v. United States, 105 Ct. Cl. 459; Love v. United States, 122 Ct. Cl. 144, 146; Tan v. United States, 122 Ct. Cl. 662, 664-5, cert. denied, 344 U.S. 895; Gray v. United States, 124 Ct. Cl. 313; Sese v. United States, 125 Ct. Cl. 526, 527-531; Mistretta v. United States, 128 Ct. Cl. 41. See also McMahon v. United States, 342 U.S. 25; Soriano v. United States, 352 U.S. 270; Smithmeyer v. United States, 147 U.S. 342, 357-358.

 We include in this category only those disability retirement cases in which there was necessarily involved the issue of whether the claimant should have been retired for disability. Cases in which a claimant previously retired for physical disability demands pay at a higher rate — e.g., because of a change in the statutory method of computation — have been generally handled by the court under the “continuing claim” doctrine, supra.

 Uhley v. United States, 128 Ct. Cl. 608; Rosnick v. United States, 132 Ct. Cl. 1; Girault v. United States, 133 Ct. Cl. 135; Duff v. United States, 133 Ct. Cl. 161; Capps v. United States, 133 Ct. Cl. 811; Loeb v. United States, 133 Ct. Cl. 937; Levine v. United States, 133 Ct. Cl. 774; Odell v. United States, 134 Ct. Cl. 634; MacFarlane v. United States, 134 Ct. Cl. 755; Seabrook v. United States, 135 Ct. Cl. 190; Soukaras v. United States, 135 Ct. Cl. 88, cert. denied, 352 U.S. 918; Barker v. United States, 135 Ct. Cl. 42, cert denied, 352 U.S. 935; Levadi v. United States, 137 Ct. Cl. 97, cert denied, 353 U.S. 917; Conlin v. United States, 137 Ct. Cl. 128, cert. denied, 353 U.S. 916; Price v. United States, 137 Ct. Cl. 685; Furlong v. United States, 138 Ct. Cl. 843; Hutchinson v. United States, 137 Ct. Cl. 889; San Millan v. United States, 139 Ct. Cl. 485; Suter v. United States, 139 Ct. Cl. 466, cert. denied, 355 U.S. 926; Proper v. United States, 139 Ct. Cl. 511; Friedman v. United States, 141 Ct. Cl. 239; Brown v. United States, 141 Ct. Cl. 557; Patterson v. United States, 141 Ct. Cl. 435; Eicks v. United States, 145 Ct. Cl. 522; Allin v. United States, 147 Ct. Cl. 459; Weiner v. United States, 148 Ct. Cl. 445; Knight v. United States, 152 Ct. Cl. 298; Frederick v. United States, 150 Ct. Cl. 769; Lipp v. United States, 157 Ct. Cl. 197; Hoen v. United States, 157 Ct. Cl. 235; Merson v. United States, No. 5-60, decided April 13, 1962 (order), 157 Ct. Cl. 941; McAulay v. United States, 158 Ct. Cl. 359, 361 [cert. denied, 373 U.S. 938).

 The opinions which can be thought to be contrary are:
(1) In Hoen v. United States, 157 Ct. Cl. 235, the court rejected the claim-on the merits and then added summarily (prompted by the Lipp decision which came down the same day) that the claim was also barred by limitations. However, it does not appear that Hoen had or applied for a Retiring Board at the time of his separation in 1946 (he did not ask for a Retiring Board until 1958). On April 13, 1962, in Merson v. United States, No. 5-60, 157 Ct. Cl. 941, the court dismissed by order (on the authority of Lipp) a disability retirement claim by a veteran who apparently had no Retiring Board and took no action until he applied to the Correction Board in 1958. The Merson case is pending on a motion for reconsideration. [In light of Harper v. United States, decided November 7, 1962, post, p. 135, plaintiff’s motion for reconsideration was granted on November 7, 1962, and the order of dismissal vacated.]
(2) The holding in Price v. United States, 137 Ct. Cl. 685, is indecisive. Judge whitaker’s opinion, in which Judge Laramore joined, treated the action of the Disposition Board as sufficient to start the statute running; no Retiring Board was requested at the time. Chief Judge Jones concurred in the result only. Littleton and Madden, JJ. would not have passed upon the limitations issue at all. Similarly, though there may have been no Retiring Board in MacFarlane v. United States, 134 Ct. Cl. 755, there was, prior to release, a Disposition Board and extensive medical examination to determine disability. In both Maci’arlane and Price, the majority of the court appears to have treated the Disposition Board (and consequent proceedings) as the equivalent of a Retiring Board proceeding.

 Since tRe Correction Board actually reopened tire proceedings, and directed new examinations of Frederick and a new Rearing before a Physical Evaluation Board (as successor to tbe former Retiring Boards), the court could have viewed tbe case as one in which the initial board’s decision was tentative and therefore within the class of case, to be discussed immediately below, in which the claim does not accrue until final action. Or it may be that, since the court stressed the irregularities in the Correction Board’s procedures, it thought that those irregularities in procedure (rather than the arbitrariness of the substantive determination) created a new cause of action on which the plaintiff could recover.

 The only “peculiar facts and circumstances” In the ease were that, although it was plain that he was unwell while in service, the plaintiff’s malady was not diagnosed before his release, and his symptoms were largely in remission during his service; his symptoms grew much worse afterwards and his illness more apparent.

 The Correction Board’s statutory charter is broad enough to encompass the functions of the Retiring Board as well as of the Disability Review Board.

 In McAulay v. United States, 158 Ct. Cl. 359, 361 [cert. denied, 373 U.S. 938], the court recently said that: “This court has consistently held that before a person can bring suit in this court for disability retired pay, he must first exhaust his administrative remedy of applying to a Retiring Board, or Physical Evaluation Board for an administrative determination of his right to retirement for physical disability. This is not a permissive remedy ; it is mandatory, in the absence of extenuating circumstances.” But the same paragraph of the opinion points out that no application was made to the Correction Board and that no administrative steps at all were taken by McAulay. The McAulay opinion does not hold that the Correction Board cannot be substituted in place of a Retiring Board when the latter was not requested or convened — as was held in Proper and Patterson.
By order of April 13, 1962, the court held the claim In Merson v. United States, No. 5-60, barred by limitations on the authority of Lipp. Merson, like Proper and Patterson, had been released from active service (in 1946) without a Retiring Board or a request for one. He took no action to obtain disability retirement pay until 1958 when he applied to the Correction Board.' A motion for reconsideration is pending in Merson. [See this court’s most recent action in Merson v. United States, No. 5-60, set forth in footnote 9, supra. ]

 In Knight, there had been prior final action by a Retiring Board and the Disability Review Board; the court held, on a motion to dismiss, that limitations ran, not from the final action of these boards, but from that of the Correction Board.

 Rosnick; Girault; Duff; Levine; Odell; MacFarlane; Soukaras; Barker; Levadi; Conlin; Hutchinson; and Price. But see Frederick v. United States, 150 Ct. Cl. 769, discussed supra and infra.

 Certain but not all of tbe cases can be distinguished as resting on alternative grounds.

 Frederick v. United States, 150 Ct. Cl. 769. decided July 15, 1960, is a disability retirement case in which the court accepted jurisdiction although there may have been prior final board action outside the six-year span. But, as pointed out supra, the Frederick opinion does not discuss this problem and may well be explainable on the ground that the initial board’s action was not final or that the Correction Board’s errors in procedure created a new claim.

 Such statements are also consistent with the view that arbitrary Correction Board action can ground a new claim in some circumstances but not in others.

 A similar case, not involving disability pay, is Goodwin v. United States, 127 Ct. Cl. 417, where a civil service employee reinstated in his job by order of the Civil Service Commission was held entitled to recover back pay, even beyond six years, because the Commission’s reinstatement order, mandatory on the employing agency, created new legal rights in the employee. See, to the same effect, Feldman v. United States, 149 Ct. Cl. 22; and O’Brien v. United States, 124 Ct. Cl. 655.

 If Sides were taken as holding that Correction Board action on a legal pay claim, based directly on statutes or regulations and not requiring administrative determination, creates a new cause of action for sums otherwise time-barred, it would be contrary to prior and subsequent decisions. In Goldstein v. United States, 131 Ct. Cl. 228, 233, the court had barred a veteran’s claim for back service pay at a higher grade (for a period prior to six years) even though the Correction Board had denied the same claim within six years. In Haislip, et al. v. United States, 152 Ct. Cl. 339, the court rejected, as barred, a claim for addtional pay (due to “re-retirement”) even though the Correction Board purported,. within six years, to correct the records to show that plaintiffs were entitled to the extra money. The court held that the issue was one of law and the claim had accrued 13 years earlier. And in White v. United States, No. 477-59, decided by order of April 13, 1962, 157 Ct. Cl. 939, the court held barred a 1959 suit for captain’s pay (from 1942 to Í947) by an enlisted man who was ordered to active duty as a captain in 1942 but who never served in that rank (because the orders were shortly cancelled). The plaintiff sought relief from the Correction Board on the ground that the termination of his appointment as captain was erroneous and unfair; relief was denied in October 1955 ; suit was brought in 1959. The court considered the claim to have accrued' no later than 1947.

 Por a discussion of the legislative history, see the Appendix to this opinion.

 In eases coming before this court in which it has been held that the limitations bar is not tolled or deferred by resort to permissive administrative remedies (see text supra, Part I, B, 4), it is likewise true that arbitrary administrative action cannot be redressed if a timely suit is not begun. Those cases illustrate the principle that the mere existence of judicial review does not, in itself, insure that a suit can always be maintained.

 As for those claimants who did not have (or request) a Retiring Board (probably because they had no adequate idea they were or could be disabled) and who thereafter apply to the Correction Board, their single judicial cause of action does not accrue, under the court’s decisions, until completion of the Correction Board proceedings (see supra and infra) ; thus, this group, too, is adequately protected against having too short a time in which to commence an action.

 This would require the overruling of Girault v. United States, 133 Ct. Cl. 135, 144, and the many other opinions holding that the cause of action acorues upon the final action of the Retiring Board and is not tolled by proceedings before the Disability Boapd or Correction Board, See supra.

 E.g., performance grading of officers and enlisted men ; minor disciplinary-actions ; recommendations for decorations, etc.; promotions ; assignments, etc.; school grades. .

 The Disability Review Board cannot be distinguished from the Correction Board with respect to the creation of a new cause of action. What holds good for one holds good for the other.

 The Knight opinion denying a motion to dismiss, the only opinion to articulate the theory that a new cause of action arises from a Correction Board proceeding, was rendered on January 18, 1961, only a year-and-a-third before the Lipp decision.

 If Re did make such a request in December, it was followed by his acceptance of unconditional separation in January.

 E.g., Harmon v. Brucker, 355 U.S. 579; Leedom v. Kyne, 358 U.S. 184; Stark v. Wickard, 321 U.S. 288.

 I.e., the provision authorizing the services to make payments to servicemen whose records had been corrected In their favor.

 In this colloquy, the Congressmen seemed to Indicate that they contemplated general court review of decisions of the Correction Board.