Per Curiam :
This Congressional reference case[1] requests us to report on plaintiff’s claim that, at a time when he was a Government employee in 1946-1951, he was illegally reduced below grade 12 level — including the facts relating to (i) delay or laches, (ii) the question of whether the limitations bar should be removed, and (iii) plaintiff’s excuse for not having resorted to established legal remedies. We are asked to inform the Congress whether plaintiff has a legal or equitable claim, or is seeking a gratuity, and the amount (if any) legally or equitably due from the United States.
In 1946, plaintiff was an Air Force inspector of material being produced by contractors with the Air Force. Effective May 5, 1946, and apparently as part of a post-World War II reduction-in-force, he was reduced in grade from CAF-12 to CAF-11, by a notice which said that the reduction was not a reflection on his qualifications or efficiency. His delayed administrative appeal to the Civil Service Commission (apparently it was a year late) was denied as untimely. As of June 29, 1941, he was further reduced to grade CAF-10 — this time for deficiencies in his performance. On appeal from this demotion, the Civil Service Commission held the procedure defective (mainly for failure to give the required 30-day notice) and ordered his restoration to grade 11, with back-pay. Shortly after he was placed again in that grade, the Air Force began new proceedings to demote him, on the same charges; this later reduction became effective on November 30,1947. This time the Civil Service Commission affirmed the agency’s action, the Commission’s final decision being rendered on June 28, 1948. Effective October 15, 1950, plaintiff was re-promoted to GS-11 (after a reassignment) and, as of September 30, *615 1951, lie was raised to GS-12.[2] In the present petition, plaintiff complains of his demotions, in May 1946 and November 1947, from grade 12 to grade 11 and then to grade 10; he seeks the pay he would have received if he had been a grade 12 employee continuously from May 1946 to September 30, 1951 (when he again reached the grade 12 level).
On July 21, 1952, plaintiff brought suit in this court, attacking the demotion of May 5, 1946 (but not the further reduction of November 1947). On the defendant’s motion, this court dismissed the petition as filed more than six years after the reduction of May 1946, and thus barred by the statute of limitations. Group v. United States, 125 Ct. Cl. 135 (No. 374 — 52, decided May 5,1953).
A bill (H.K. 4426) to grant plaintiff the relief he sought in the 1952 action, as well as relief for the 1947 demotion, was introduced (on February 11, 1959) into the House of Eepresentatives, in the 86th Congress. This is the bill which the House has referred to us (in July 1960) under 28 U.S.C. §§ 1492 and 2509. Plaintiff’s second petition in this court, under the reference, was filed on July 27, 1960. Neither party presented oral testimony. The case was submitted to us on a stipulation of facts, plus documentary exhibits.
Plaintiff clearly has no legal claim, at this time, against the United States on account of the 1946 demotion. The prior decision of this court was a final adjudication which now bars recovery, under the principles of res judicata, for that reduction. See Fairbank v. United States, 164 Ct. Cl. 1. Moreover, it appears that plaintiff had no legal claim when he initially filed suit in July 1952. Although the court has since receded from the position that a claim for an illegal wrongful demotion or separation accrues on the date of the reduction or removal and has held, instead, that the claim ripens upon the final administrative determination sustaining the agency’s action (see, e.g., Keeney v. United States, 150 Ct. Cl. 53 (1960); Friedman v. United States, 159 Ct. Cl. 1, 10, 310 F. 2d 381, 388, cert. denied, 373 U.S. 932 (1963)), that rule *616 is inapplicable to plaintiff’s case. He did not seek to appeal the May 1946 reduction until sometime in 1947, long after the proper appeal time had elapsed. In the present case, though he had the opportunity, he presented no evidence showing a legal excuse for this long delay. The rule of the Keeney and Friedman opinions governs those cases in which the federal employee takes a timely administrative appeal or proves a legal excuse for taking an untimely appeal. Not that rule but the rule of the first Group decision, 125 Ct. Cl. 135, supra. controls cases, like this one, in which the employee takes no appeal at all or without legal excuse attempts to file a belated administrative appeal. Accordingly, we hold that plaintiff had no legal claim in July 1952; his cause of action was time-barred when he first instituted suit in this court.
That part of the present petition which attacks the further demotion in November 1947 is likewise barred by limitations. Some thirteen years elapsed between that reduction and the filing of the present petition. Some twelve years passed before the bill for plaintiff’s relief (H.R. 4426) was introduced into the 86th Congress. There is no longer any legal claim.
We also cannot find that plaintiff has any equitable claim for which he should be compensated or that the bar of limitations should be removed. His failure to file suit before July 1952 may have been due to his attorney’s neglect, but he has not shown, by proof, that he personally took the appropriate steps to prod his attorney or seek a new one. The record is bare on the subject of plaintiff’s personal efforts, and in that state of the evidence we cannot find an excuse for a potential litigant who hired an attorney in 1948 but, so far as we know, did not take the proper steps to see that suit was filed before July 1952. There is a similar lack of proof as to the reasons why suit was not brought on the November 1947 demotion which was upheld by the Civil Service Commission.
Plaintiff has made an argument in the present proceedings as to why he delayed so long in appealing the May 1946 reduction to the Civil Service Commission, but he introduced *617 no evidence to give the necessary factual support to his argument. Again, the record is barren on the point.[3] In these circumstances, we cannot say that plaintiff has shown facts excusing either his delay in appealing to the Commission or in filing suit in this court. Nor did he introduce proof that the demotions in May 1946 and in November 1947 were arbitrary, unlawful, unsupported by the facts upon which they purported to rest, or unjust.[4] As the record stands, the presumption of regularity is unimpeached and the Air Force’s actions must be accepted as lawful. Cf. Keener v. United States, decided this day, ante, p. 334. Accordingly, plaintiff has not shown himself entitled to any equitable consideration. In our view, nothing is due him, legally or equitably, and there is no adequate reason for lifting the bar of limitations as to his claim.
This opinion and the findings of fact incorporated herein will be certified by the Clerk of the House of Eepresentatives pursuant to House Eesolution No. 538, 86th Congress, 2d Session.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and arguments of counsel, makes findings of fact as follows:
*618 1. This claim is before the court pursuant to H. Res. 538. 86th Cong., 2d Sess., which provides as follows:
Resolved,, That the bill (H.R. 4426) entitled “A bill for the relief of Charles G. G. Group,” together with all accompanying papers, is hereby referred to the Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and the court shall proceed expeditiously with the same and report to the House at the earliest practicable date, such findings of fact, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy, and conclusions based on such facts as shall be sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant.
H. Res. was introduced on May 23, 1960, and passed on June 21, 1960. H.R. 4926 was introduced on February 11, 1959.
2. This resolution was sent to the court with House Report No. 1721, 86th Cong., 2d Sess., which stated, in part:
The bill (H.R. 4426) which is being referred to the court by this resolution is to pay Mr. Group an amount equal to the difference between the amount which he actually received as salary from the United States from May 5, 1946, to September 30, 1951, inclusive, and the amount he would have received in said period had he not been reduced in grade.
Before May 5, 1946, Mr. Group was in Government employment as a procurement inspector, CAF-12. Effective May 5,1946, he was reduced m grade to CAF-11, and he appealed. The appeal was denied for not being timely filed. On June 29,1947, he was further reduced in grade from chief, CAF-11, to assistant chief, CAF-10, which reduction he appealed and, because of noncompliance with required procedures to effect the reduction, he was restored, on October 5, 1947, to his former grade of CAF-11. Effective November 30,1947, he was reassigned and Ms grade reduced to CAF-10. From this reduction he appealed to the second Civil Service Commission regional office and from an adverse decision he appealed to the Board of Appeals and Review and the decision was sustained.
*619 . On October 15, 1950, Mr. Group was classified as an aircraft inspector, GS-11, and promoted accordingly. He was again upgraded on September 30, 1951, to GS-12, which grade he held until November 16, 1956, when he retired with 35 years’ Federal service.
On October 3, 1956, the General Accounting Office adjusted his pay for the period June 29 to October 4,1947, aforesaid, and Mr. Group received $168.83.
Mr. Group contends that the promotion to GS-12 is indicative and prima facie evidence that the reductions in grade, cited above, were without legal justification. The Department of the Air Force disputes that contention and asserts that his downgrading was while he was serving in a different location and a different organizational segment, and that his upgrading in 1950 and 1951 were due to increase in duties and responsibilities and were in no way related to the previous downgrading actions.
This dispute was carried by Mr. Group to the Court of Claims where, on motion of the Government, the suit was dismissed as barred by the 6-year statute of limitations, whereupon H.R. 4426 was filed for the relief of Mr. Group.
The ruling dismissing the action was handed down by the court on May 5,1953. However, the committee was informed, in testimony given at hearing on the matter before its subcommittee, the court overruled that decision on December 5, 1956, but by this time the statute of limitations had run against Mr. Group, even under the court’s newest finding.
The committee carefully considered this matter and concluded that the issues raised are of such adversary nature that the matter should be referred to the Court of Claims under the procedures for congressional reference cases as contained in sections 1492 and 2509 of title 28 of the United States Code. Accordingly, the committee recommends that House Resolution 538 be considered favorably.
3. On April 1, 1946, plaintiff was employed by the War Department of the United States. On that date plaintiff was transferred from the Fisher Plant, Cleveland, Ohio, to the Cleveland suboffice of the Detroit Procurement Field Office at the grade and designation he held at the Fisher Plant as a procurement inspector, CAF-12.
4. Thereafter plaintiff was reduced in grade from CAF-12 to CAF-11, effective May 5, 1946. The notice of reduction *620 in grade stated: “This action is not to be interpreted as a reflection on your qualifications or efficiency.”
5. From September 17 to 20, 1946, an inspection survey was conducted by personnel from the Headquarters, Air Materiel Command, and the Bell Aircraft Corporation, Niagara Falls, New York. In the report of this inspection (Memorandum Report No. TSBQC4D-M-195, dated October 1, 1946) it was stated, in part: “The contractor’s and AAF inspection organizations are functioning in a satisfactory manner with the exception of those discrepancies noted above.”
6. In September 1946 plaintiff was operating as an itinerant inspector of miscellaneous material under the Cleveland Procurement Field Office. On September 30, 1946, plaintiff, upon his acceptance of an assigmnent as Chief, Niagara Falls Air Force Suboffice Inspection Branch, Bell Aircraft Corporation, Niagara Falls, New York, assumed such position in the grade of CAF-11.
7. An inspection was made at the Bell Aircraft Corporation by personnel from the Headquarters, Air Materiel Command, from March 24 to 27,1947. Upon conclusion of this inspection, a Memorandum Report (No. TSBQC4D-M-208, dated April 1, 1947) was issued. That report stated, in part: “The AAF Chief, Inspection Branch, is not satisfactorily discharging his duties in accordance with AMC Regulation 21-20.”
The following memorandum was addressed to the plaintiff on April 28, 1947, by Maj. Wm. J. Seevers, AAF Plant Representative:
It is requested that the undersigned be advised whether or not you interpose any objection to the administrative reassignment from the position of AAF Inspector in Charge to that of Assistant AAF Inspector in Charge and voluntary acceptance of change in grade from CAF-11, salary $5905.20, to CAF-10, salary $5278.20, effective this date.
At the bottom of that memorandum is the following statement signed by Chas. G. G. Group: “The above change in grade is approved.” The change actually became effective as of June 29, 1947 (see finding 8).
*621 8. Thereafter, in 1947, plaintiff appealed the reduction in grade from CAF-12 to CAF-11, effective May 5, 1946, to the Civil Service Commission. On October 16, 1947, the appeal was denied by the Regional Director of the Civil Service Commission as being untimely. The action of the Regional Director was affirmed by the Civil Service Commission’s Board of Appeals and Review on November 26, 1947.
9. As a result of the inspections mentioned in findings 5 and 7 herein, plaintiff was reduced from Chief of the Inspection Branch at Bell Aircraft, CAF-11, to Assistant Chief, CAF-10, effective June 29, 1947. Plaintiff appealed this reduction in grade and the Director of the Second Regional Office Civil Service Commission, determined that plaintiff’s reduction in grade violated Section 14 of the Veterans Preference Act of 1944, because plaintiff was not given reasons in writing specifically and in detail for the reassignment to Assistant Chief, Inspection Branch. The determination of the Regional Office of the Civil Service Commission included the following statement:
In view of the evidence secured by this office, it would appear that said notice was defective in that the effective date of the downgrading appeared to be the same date that he received the notice. * * *
Plaintiff was restored to his former grade of CAF-11 on October 5, 1947. On October 22, 1947, new charges were brought against the plaintiff for the purpose of reducing him from CAF-11 to CAF-10. The charges in this notice of reduction were the same as those given plaintiff when he was previously reduced in grade, but, in this instance, plaintiff was given a 30-day notice of the proposed action. Subsequently, by action of the Air Force, plaintiff was reduced from CAF-11 to CAF-10, effective November 30, 1947.
10. Plaintiff appealed from the action of November 30, 1947, to the Civil Service Commission. The Civil Service Commission investigated the matter, and on March 18,1948, the Second Regional Office of the Commission affirmed the action of the Air Force in reducing plaintiff’s grade. The opinion, findings, and recommendations of the Regional *622 Office of the Civil Service Commission are in part as follows:
A careful review has been made of all the facts and circumstances in the instant appeal. The appellant’s downgrading resulted from certain irregularities which were set forth in a report submitted by an inspection team which surveyed the plant where the appellant was employed. The personnel conducting this survey were from the Headquarters of the Air Materiel Command and from the information secured by this office it appears that they conducted the survey under instructions from the Commanding General, Air Materiel Command. Although the appellant in his reply to the charges as well as in the affidavits secured during the investigation and in his correspondence to this office has indicated that the report submitted by this team was inadequate, distorted, false and misleading, he has submitted no other proof in addition to these statements in refuting the charges. It is noted that he has stated that the Commission should determine whether the Department of the Army was following its regulations. It would not appear that this would be a matter over which the Commission would have jurisdiction inasmuch as the Department of the Army is authorized to promulgate regulations for its own administration.
As regards the appellant’s contention that he should have been declared surplus and allowed to exercise his “so-called bumping privileges”, it would not appear that any reduction m force occurred in the instant case and therefore retention preference regulations would not be applicable. In this connection, it is pointed out that a reduction-in-force action cannot be taken at the request of an individual employee inasmuch as a reduction in force must be imminent prior to the issuance of such a notice of the reduction. As regards the appellant’s reassignment, this would appear to be an administrative matter not within the jurisdiction of the Commission.
FINDINGS AND RECOMMENDATIONS
It is the considered opinion of this office based upon all the facts and circumstances in the instant appeal that the demotion of the appellant, Charles G. G. Group, from the position of Administrative Procurement Inspector, CAF-11, $5905.20 p.a., to Administrative Procurement Inspector, CAF-10, $5278.20 p.a., was correctly taken by the Air Materiel Command and is considered for such cause as would promote the efficiency of *623 the service. There is no evidence of any bias, discrimination or prejudice on the part of the Air Materiel Command nor is the action of demotion considered to have been arbitrarily or capriciously taken. It is the decision of this office that no change be made in the personnel action of the Air Materiel Command in demoting the appellant for the reasons outlined in the letter of charges to him under date of October 22, 1947.
Mr. Group and the Air Materiel Command are privileged, in the event that either party is not satisfied with this decision, to appeal further to the Commissioners of the U. S. Civil Service Commission, Washington 25, D.C., such appeal to be made in the case of the appellant, Charles G. G. Group, within thirty (30) days from the date of the receipt of this decision and within seven (7) days of its receipt in the case of the said employing department.
Eegulations provide that Mr. Group and the Air Materiel Command may be granted an opportunity to appear before the Commission’s Board of Appeals and Eeview in case an appeal is made to the Commissioners or that further representations may be made by submission of pertinent material in writing. Eequest for such a hearing, if desired, should be made at the same time the appeal is submitted to the Commissioners.
The action of the Eegional Director of the Civil Service Commission was affirmed by the Civil Service Commission’s Board of Appeals and Eeview on June 28, 1948.
11. On December 6, 1949, the position plaintiff then held as an Assistant Air Force Supervising Inspector in Charge, Niagara Falls Air Force Suboffice, Bell Aircraft Corporation, was eliminated, and plaintiff was made Air Force Inspector in Charge, Bell Aircraft Corporation, Niagara Falls, New York. This notice of reassignment stated:
1. Decision has been reached by this office to eliminate the position of Assistant AF Supervising Inspector-In-Charge, Niagara Falls AF Sub-Office, Bell Aircraft Corporation, Niagara Falls, New York, presently held by you. The position is considered unnecessary, and its elimination will allow for better overall organization.
2. It is intended to assign you to the position of AF Inspector-In-Charge, Bell Aircraft Corporation, Niagara Falls, New York, a position presently held by Mr. Whitcomb, the AF Supervising Inspector-In-Charge, Niagara Falls, New York, as a dual assignment. Mr. Whitcomb will be relieved of the dual assignment and *624 assignment as the AF Supervising Inspector-In-Charge, Niagara Falls AF Sub-Office.
3. In connection with this reassignment, it is desired to point out that you were relieved as the Chief, Inspection Section, Bell Aircraft Corporation, Niagara Falls, New York, o/a 28 April 1947, for failure to perform your duties in a proper manner. During the past few months, there have been instances where, in the opinion of this office, you have failed to perform your duties in a satisfactory manner. These instances are outlined below:
a. On or about 80 August 1949, the Graflex Corporation, Kochester, New York, received Contract No. AF 83(038)7715 for a quantity of cameras. Immediate delivery was specified and shipments were ready to go forward o/a 31 August 1949, the cameras having been inspected and accepted by the AF Inspector assigned to this duty. You interfered with this Inspector in the performance of his duties by raising a number of questions, not pertinent to the material being furnished under the terms of the contract, and, finally, tried to keep Mr. John A. Engl, Admin. Procurement Inspector, detailed as a Transportation Agent, from issuing the necessary Bills of Lading to cover the shipment. You took the position that there was a lack of authority for the shipment even though the contractor was in receipt of a TWX instructing him to make immediate shipment and providing all necessary shipping instructions. You agreed to meet the contractor’s personnel at 1:00 P.M. on 31 August 1949 and discuss the matter. At 3:00 P.M. the contractor phoned Mr. Engl and advised him that you had not yet arrived for the conference. You were finally located at the Hawkeye Works, Kochester, N.Y., and you proceeded to the plant of the Graflex Corporation, Kochester, N.Y., and, after considerable discussion, you allowed the shipment to go forward. Your arbitrary attitude in this matter and complete disregard of instructions contained in the TWX from Headquarters, AMC Wright-Patterson AF Base, placed the Air Force in a very bad light with the contractor.
b. During the absence of the AF Inspector-In-Charge, Hawkeye Works, Kochester, N.Y., who was on leave, you made statements to the management of that company, concerning inspection requirements, that were at considerable variance with the procedures agreed upon by the AF Inspector-In-Charge and the management. In addition, upon the return of the AF Inspector-In-Charge, you insisted that he go to the contractor and arrange for Air Force Office space in the amount of *625 at least four hundred (400) square feet, which would contain a private office for the AF Inspector-In-Charge, and a conference room suitable for aproximately twenty (20) people. The undersigned had told you, previously, that the maximum number of Air Force personnel that would be stationed at the Hawkeye Works would be five (5) Inspectors and one (1) clerk. It should have been obvious to you your request for four hundred (400) square feet of office space was far in excess of requirements. Your actions in these matters caused embarrassment to this office, and it was necessary for the undersigned to visit Rochester, New York, for the purpose of taking corrective action.
c. When Mr. Whitcomb devised a system for recording the volume of Scrap and Re-work, on a basis of dollar value, at the Bell Aircraft Corporation, Niagara Falls, New York, you insisted that your system of recording the number of Scrap and Re-work Tickets was far superior. The actual cost of Scrap and Re-work is far more important than the number of Scrap and Rework Tickets issued, which tell you nothing of the cost involved. Not only did you disagree with Mr. Whit-comb in this matter, but you argued about it constantly until the contractor became confused and Mr. Whitcomb had to insist upon his method being followed, after discussing the procedure with the undersigned. Constant argument with your Supervisor, over procedures to be followed, cannot do otherwise than result in unsatisfactory conditions and to reflect unfavorably upon the Air Force.
d. Duffing a recent visit to the Niagara Falls AF Sub-Office, during the period 29 November to 1 December 1949, the undersigned witnessed an argument between you and Mr. Whitcomb concerning the procedure to be followed in determining material to be declared scrap in connection with the contract for H-12 Helicopters at the Bell Aircraft Corporation. The Local Contracting Officer had advised Mr. Whitcomb of the procedure desired and you had been instructed to make the determination of the material to be declared scrap. You told Mr. Whitcomb that if he wanted the scrap determination signed, he would have to do it himself because you would not sign it unless an itemized list was furnished. It is the duty of the Local Contracting Officer to determine the extent of the assistance required from the Quality Control Section, within the scope of existing regulations, and this had been determined. As a result of your disagreement with the procedures to be *626 followed, it was necessary to hold, a conference with all the interested personnel and convince yon that the procedure was satisfactory. Your unwillingness to accept instructions or to follow the instructions that you receive is a constant source of embarrassment to this office. It would appear that you do not read existing Directives, pertaining to Inspection Procedures, otherwise you would be familiar with them and it would then be unnecessary for your Supervisor to explain every procedure to you and try to convince you that the action is a proper one.
4. The deficiencies outlined in paragraph 3, a to d inclusive, will be reflected in your next Report of Efficiency Rating, and they are being brought to your attention so that you may know what they are and take necessary steps to correct them.
5. You are being assigned as AE Inspector-In-Charge, Bell Aircraft Corporation, for the purpose of giving you an opportunity to prove your ability. You will be given every assistance in this assignment and every opportunity to make good in the position. Both the undersigned and personnel from the Aircraft Section, Quality Control Division, Hqs., AMC, will make monthly visits to the Bell Aircraft Corp., Niagara Falls, New York, for the purpose of maintaining close surveillance over the operations of the Quality Control Unit at that plant.
6. It is requested that you indicate, by indorsement hereon, whether or not you are willing to accept the position of AF Inspector-In-Charge, Bell Aircraft Corporation, Niagara Falls, New York, under the conditions outlined in this letter. Your immediate attention to this matter is requested.
On December 9,1949, plaintiff accepted this position.
12. On October 2, 1950, plaintiff was appointed as Chief, Quality Control Branch, Office of Air Force Resident Officer-In-Charge, Bell Aircraft Corporation, Niagara Falls, New York. Effective October 15,1950, he was promoted to GS-11.
13. In July of 1951 plaintiff’s position as Chief, Quality control Branch, at the Bell Aircraft Corporation Plant, Niagaa Falls, New York, was subject to a classification survey. As a result of this survey, plaintiff received a promotion (indefinite) to GS-12, at a salary of $6,600 per annum, effective September 30, 1951. This promotion was subject to post-audit and correction. The notification of this per *627 sonnel action stated that the employee’s last performance rating was satisfactory.
14. On July 21, 1952, the plaintiff brought a suit in this court, and the number 374-52 was assigned to his case. In this action he stated that he was a veterans-preference eligible and had permanent civil service status. Plaintiff also referred in his petition to a reduction in grade effective May 5, 1946 (finding 4), and his subsequent promotion on September 30, 1951 (finding 13). His petition further alleged that the demotion was in violation of his rights as a veterans-preference eligible and as a civil servant.
Defendant filed a motion to dismiss this former suit on the grounds that plaintiff’s cause of action accrued more than 6 years prior to the filing of his petition, and any action he had was barred by the statute of limitations.
15. The following letter, dated September 15, 1952, was sent to plaintiff by Maj. Vincent F. Kicci, TTSAF, Chief, Civilian Personnel Branch, Northeastern Air Procurement District:
The duties and responsibilities of the position which you now occupy as described on Position Description No. NEB.B-648, have been very carefully analyzed and evaluated. As a result, your position has been found to be properly allocated as Aircraft Inspector, GS-9— $5810.00.
The allocation of your position as shown above has been made in accordance with Government-wide allocation standards. Both Federal statute and directly applicable decisions of the Comptroller General made classification mandatory and not discretionary with the department. In view of this legislative requirement, the action which has been taken concerning your position and any future adjustment in your salary resulting therefrom is considered such as will promote the efficiency of the service.
You are hereby given thirty (30) days notice of this pending change to lower grade. The effective date of personnel action changing you from Aircraft Inspector GS-12, $7240.00 p.a., to Aircraft Inspector, GS-9, $5810.00 p.a., will not be earlier than 17 October 1952. During this period of advance notice, you will remain in an active duty status at your present designation, grade and salary.
*628 You may reply to this letter personally and in writing within ten (10) days after receipt setting forth any reason why this action should not be taken. Your reply will be given careful consideration and you will advised in writing as to final action that will be taken. Your reply should be addressed to the Commanding Officer, Headquarters Northeastern Air Procurement District, Boston 8, Massachusetts, attention: NEACU.
You are further advised of your right to appeal the classification of your position in accordance with the procedure outlined in AF Regulation No. 40-14, if you believe your duties and responsibilities have not been properly evaluated. Your appeal should be submitted to NEACU. The initiation ox such an appeal will not necessarily delay the completion of the action indicated above.
You are also advised of your right under Section 14 of the Veterans Preference Act to appeal to the Regional Director, Second United Civil Service Region, Federal Building, Christopher Street, New York 14, New York. The procedure to be followed is covered in Chapter Z-l - 304 of the Federal Personnel Manual.
Further information concerning the appeal procedures may be obtained from Mr. Carl Amelio, Chief, Employee Utilization Section, this branch.
16. The following letter, dated October 21,1952, was sent to plaintiff by Henry J. McCluskey, Chief, Civilian Personnel Branch:
Reference is made to letter from this office dated 15 September 1952 in which you were given thirty days advance notice of pending change to lower grade from Aircraft Inspector GS-12 to Aircraft Inspector GS-9, and also to your letter of reply dated 26 September 1952.
The statements in your reply have been carefully reviewed. The change to lower grade on the position which you occupy was determined on the basis of duties and responsibilities involved in such position and has no reflection on you as an individual. The survey of all
gositions is mandatory under established Federal Civil ervice Regulations. Your rights to appeal the classification of your position were outlined in letter of advance notice of proposed action dated 15 September 1952.
After due consideration of the contents of your letter and review of the position description, it has been determined that the position you now occupy be allocated as Aircraft Inspector, GS-9.
*629 Reassignment witliin this District to a position, in which you would be able to retain your present grade is not possible at this time but you may l>e assured that every consideration will be given you'if at some future date such a reassignment is possible.
In view of the above, steps will be taken by this office to effect the change to lower grade on 26 October 1952.
17. On May 5,1953, this court granted defendant’s motion, dismissing plaintiff’s suit by an opinion (Charles G. G. Group v. United States [No. 374-52] and Francis J. Kiernan v. United States [No. 375-52], 125 Ct. Cl. 135) stating, in part, as follows:
The plaintiffs’ causes of actions first accrued on the dates when the alleged wrongful reductions became effective. If wrongful, the liability of the defendant became fixed on those dates and the plaintiffs were then entitled to institute suits. No subsequent actions were taken by defendant which would give rise to a new cause of action. It is accepted law that the period of limitation on an action by an employee under an employment arrangement runs from the time at which the employee is discharged or refused employment. Schatte v. International Alliance, etc., 182 F. 2d. 158, 164, certiorari denied 340 U.S. 827.
More than six years elapsed between the time of the accrual of the plaintiffs’ causes of actions and the filing of the petitions in this court, and their claims are therefore barred by the statute of limitations. Defendant’s motions to dismiss are granted and the plaintiffs’ petitions are dismissed. It is so ordered.
18. Plaintiff’s second petition was filed on July 27, 1960, following a reference of the claim to this court on June 1, 1960, by H. Res. 538, 86th Cong., 2d Sess., as set out in finding 1.
19. Plaintiff has stated in his most recent petition that the delay in filing his initial claim in this court is chargeable to his attorneys, and he has submitted some evidence in support of that allegation, including a letter from one attorney dated May 4, 1949, and a receipt for a payment of $150 to his attorney of record in August 1948. No explanation has been given for this delay by the attorneys. Plaintiff has not, moreover, presented any evidence as to his personal efforts to have the original petition filed on time. Nor has plaintiff *630 presented any sufficient proof as to the reasons for his delay in appealing to the Civil Service Commission after the demotion which was effective May 5, 1946. Plaintiff has failed, therefore, to show that delays attributable to him were excused or justified.
20. Plaintiff has failed to prove any facts showing that the adverse personnel actions against him, which are the subject of this proceeding, were arbitrary, unlawful, unsupported by adequate evidence, or otherwise unjust.
21. No testimony has been offered concerning any issue involved in this action, each party relying on documentary proof and stipulated facts.

 Since tliis pro se case was referred by the Congress in July 1960, the petition was filed in that month, and significant proceedings in the case were had prior to the ruling of the Supreme Court in Glidden Co. v. Zdanok, 370 U.S. 530 (1962), we think it proper to file this report without reference to the Supreme Court’s opinion in that case. Accordingly, the defendant’s belated informal suggestion of lack of jurisdiction is denied.

 Plaintiff appears to have been demoted again in 1952 (see findings 15-16), but tbe bill referred here by the House of Representatives does not purport to cover that demotion. The bill is confined to events between May 5, 1946, and September 30, 1951. See finding 2. It seems that this 1952 demotion was set aside and plaintiff restored to his former grade.

 Plaintiff claims that he never received proper notice of the demotion which was effective May 5, 1946, and found out that he had been demoted only when his pay-check was cut. There is, however, no testimony to that effect, not even plaintiff’s. Defendant’s files do not show clearly whether or not proper notice was given, but we cannot hold, on this record, that it was not given. Furthermore, plaintiff does not adequately explain why he waited until 1947 to appeal to the Civil Service Commission when his papers admit that he knew about the demotion in June 1946.

 On the claim that plaintiff did not receive the proper notice in 1946, see footnote 3, supra. Plaintiff argues that his re-promotion to grade 12, as of September 30, 1951, shows, in itself, that he was improperly reduced in 1946 and 1947. But it is clear from the record that the Air Force considered that the re-promotions plaintiff received had been earned by improvement in his work and correction of deficiencies in his performance. There is nothing to indicate that, in re-promoting plaintiff to grade 11 in October 1950 and to grade 12 in September 1951, the Air Force thought that it had made a mistake in originally demoting him in May 1946 and November 1947. By the same token, the re-promotions have no bearing on the prior demotions. Cf. Jordan v. United States, 138 Ct. Cl. 647, 648, 158 F. Supp. 715, 716 (1957).